Upon the trial many points were raised, and the facts connected with them are fully stated in the record. But as the opinion of this Court turns upon one or two of those questions only it will be useless to advert to any facts but those relative to the points on which the case is here decided.
Both parties claimed under one William Falls, who was seized in fee, and in 1818 conveyed in fee to John Dixon, upon the consideration stated in the deed of $500. At that time Falls was indebted to several persons, and he and Dixon, who were brothers-in-law, stated that the deed was made for the purpose of preventing Falls' creditors from selling the land, and of preserving it for Falls' family. On the part of the plaintiff evidence was also given that the consideration, or pretended consideration was $500, as mentioned in the deed, but that it was divided into three installments — one payable in five years, another in nine years, and the third in seventeen years. On the part of the plaintiff there was then given in evidence a deed from the same William Falls to the lessor of the plaintiff for the premises in fee, bearing date 2 March, 1836, purporting to be made in consideration of $50, which sum was paid to said Falls, who then said that his reason for selling the land was that he was poor and unable to go to law about it.
On the part of the defendant evidence was then given that the creditors of Falls at the date of his deed to Dixon had been all since satisfied, and that at the time of the contract between the lessor of the plaintiff and Falls and the execution of the deed in 1836, the premises were worth $25,000. The action was brought shortly after the (422) lessor of the plaintiff took his deed. On the part of the plaintiff it was contended that the deed to Dixon was fraudulent and void as against his lessor.
On the part of the defendants it was, however, contended that although that deed might be fraudulent as to creditors and purchasers, yet the plaintiff's lessor could not take advantage thereof, because he did not represent any creditor of Falls, and because he was not a purchaser from him for a valuable consideration and bona fide.
His Honor instructed the jury "that if the deed from Falls to Dixon was made to defraud the creditors of Falls, though it was good as against Falls himself and all claiming under him as volunteers, yet it was void as to the creditors of Falls and as to purchasers from him, purchasing for a valuable consideration and bona fide, by force of the statute; that money was a valuable consideration; and that in coming to a decision of the question, whether the plaintiff's lessor had brought himself within *Page 332 
the protection of the statute, they would take into consideration the real value of the land and the price given, and the circumstances attending the transaction. That the inadequacy of the price was not of itself sufficient to deprive the purchaser of the benefit of the statute, yet it must not be such an inadequacy as shows the price was merely colorable and merely intended to get rid of the first conveyance. That when this is the case, or when the transaction is accompanied by any other circumstances showing a fraudulent intent on the part of the purchaser, or a fraudulent combination between the purchaser and the seller to defeat the prior conveyance — in neither case can a subsequent purchaser entitle himself to the protection of the statute." And in applying those principles to the particular case the jury was directed that "if they were satisfied that the price the lessor of the plaintiff paid was merely colorable, or that his purchase was made with a fraudulent intention, or through a combination with Falls to defeat the conveyance to Dixon, then the lessor of the plaintiff was not a bona fide purchaser for a valuable consideration within the language and meaning of the statute, and was not entitled to its protection. That on the contrary, if they should believe that the price was inadequate, yet that the lessor of the (423) plaintiff had purchased in good faith he was entitled to the protection of the statute, and the deed to Dixon was void as to him."
The counsel for the defendants then moved the court further to instruct the jury "that if the price given by the lessor of the plaintiff to Falls was greatly inadequate, or he purchased on speculation, his purchase was fraudulent and not entitled to the protection of the statute against the deed to Dixon." But his Honor refused the instruction prayed for, and repeated that before given, and there was a verdict and judgment for the lessor of the plaintiff, and the defendants appealed.
The counsel for the defendants contend that the court erred in laying down, in the first part of the instructions, that the deed to Dixon, if designed to defraud the creditors of Falls, was void as against purchasers from Falls as well as against his creditors; and it is insisted that it was a prejudice to the defendants to leave the case to the jury upon that erroneous and irrelevant proposition.
But we think the judgment cannot be reversed on that ground. It is generally true that deeds void by reason of bad faith, as to creditors, are also void as to purchasers. They are not, indeed, void as to the *Page 333 
purchasers, because they are so as to creditors, but by reason of the bad faith, which alike vitiates them as against both purchasers and creditors. There may, perhaps, be instances in which purchasers would not stand on the same footing with creditors. If so, this certainly is not a case of the kind, for if the deed be fraudulent as to the creditors it is so upon the grounds that the sale to Dixon was merely colorable and in trust for Falls or his family, and that the consideration was never to be paid, if we are to judge from the relation of the parties and the distant periods to which the payments were deferred. Now the same considerations would render the deed voluntary, and so void as against a (424) subsequent purchaser under the statute, 27th Elizabeth. See 1 Rev. Stat., ch. 50, sec. 2. This is, as we think, what his Honor is, in fairness, to be understood to mean. At all events, the supposed error, if committed in this case, worked no prejudice to the defendants, and therefore furnishes no reason for setting aside the verdict. It could do the defendant no harm, because, clearly, the deed was here as much void under the 27th Elizabeth against the one class as it was under the 13th Elizabeth against the other class of those persons. But furthermore, the defendants did not even contend that the deed was good against purchasers, but in the instruction prayed by them expressly admitted it to be void both as to creditors and purchasers, and relied only on this: That the lessor of the plaintiff was not such a person as could claim the benefit of the statute for the protection of "purchasers for money or other good consideration." The defendants cannot, therefore, complain that the court accepted their own admission on this point.
But upon the point on which the defense was placed, as just stated, the opinion of the court is that the law is for the defendants. Fifty dollars is not such a consideration for conveying an estate worth $25,000 as will defeat a prior voluntary conveyance. It is too palpably and glaringly deficient to amount to a purchase within the Statute 27th Elizabeth; and so, we think, the jury ought to have been told. They were, on the contrary, instructed that, notwithstanding the price was inadequate, and greatly inadequate, they might find that the transaction was or was not fraudulent, according to the intent of the parties; whether it was or was not merely to defeat the previous deed. Without reading the instructions hypercritically we understand them to be substantially that any sum of money constitutes a purchaser under the statute, and that the inadequacy of the consideration,however great, will not, of itself, take the case out of the statute unless the jury shall infer therefrom, as a fact, that the second conveyance was a contrivance merely to defeat the first.
In those opinions this Court does not concur. We think there are cases, and that the present is one of them, in which the inadequacy (425) *Page 334 
of the consideration alone is sufficient to condemn the transaction, and strip from it the mask of a purchase, and that the court ought so to have stated to the jury as a matter of law.
The opinion of his Honor as to the effect of inadequacy of price was, probably, drawn from the doctrine that an agreement cannot be set aside as between the parties merely for that cause. But the reason of that is that, if one will, without imposition, distress or undue advantage, make a bad bargain with his eyes open, he must stand to it. His agreement is sufficient, because his interests alone are effected by it. The cases of his creditors, however, or persons claiming under a previous conveyance from him, admit of a very different consideration. They fall within LordHardwick's fourth class of cases in Chesterfield v. Jansen: that of a fraud and imposition on third persons, not parties to the agreement. To the complaint of such third person it cannot be replied that he cannot call the consideration petty and inadequate because he had assented to it. As against creditors and prior donees the price must be sufficient in itself to sustain the deed, without the aid of their acceptance; for no such acceptance exists. Then it is to be inquired what price will put the statute in operation, or what inadequacy will prevent its operation? We think that a fair and reasonable price, according to the common mode of dealing between buyers and sellers was meant by the Legislature; and at all events, no case is within the statute in which the purchaser cannot, with a good conscience, claim to hold the estate upon the ground and for the sake of the price paid, and not merely upon the score of the vendor's agreement, and that the present is not such a case.
The term "purchaser" is not used in the statute in its technical sense, for one who comes to an estate by his own act. It is to be received in its popular meaning, as denoting one who buys for money, and, as we think, buys fairly and of course for a fair price. Very soon after the act of Parliament passed, the case of Upton v. Bassett., Cro. Eliz., 445, was decided and by judges of whom some had assisted in framing the act. It is there laid down that every purchaser ought not to have the (426) benefit of the statute, nor even every one that pays money, but only those who come to land upon good consideration lawfully, and not without consideration, nor by any indirect means. The case does not leave us at a loss, what we are to understand by the expressions "without consideration" and "indirect means," for it proceeds immediately to exemplify the principle laid down by giving a case wherein one made a voluntary conveyance, and afterwards another procured him, for £ 500, or"other petty consideration," to sell unto him the land, worth £ 500 per annum; and it was held that, although he paid money, yet he should not avoid the first conveyance. It is clear that it was then understood, as matter of law, that the act only extended to such *Page 335 
purchasers as gave a substantial price, or come in upon other good consideration, as marriage. When the consideration was pecuniary, a "petty" sum, when compared with the value of the land — and the amount of a year's rent was thus denominated — would not help a second over the head of a first conveyance. In Doe v. Routledge, Cowp., 705, the same doctrine is found, yet more distinctly expressed. In that case it was admitted by the counsel for the plaintiff that a consideration of five shillings, which he calls colorable or nominal — would be bad; but he contended that £ 200 could not be deemed colorable only, and as the statute did not require the full value that the sum of £ 200 was sufficient to place the second surrender before the first, which was purely and entirely voluntary. But the court held otherwise. Lord Mansfield called the second transaction "a gross fraud and no purchase at all," and said that it could not set the former deed aside. Now, why was that nopurchase at all? Not for the want of a valuable consideration, if money simply be such a consideration within the statute, for the £ 200 was actually paid, and there was no circumvention of the settler. It was the inadequacy of price, singly — a property worth £ 2,000 sold, or pretended to be sold, for £ 200. There was nothing else in the case but the disparity of the consideration. The words of Lord Mansfield are, "the consideration of £ 200, compared with the real value, shows it to have been no purchase at all, but a gift." To make a purchase within the statute he declares it must be a bona fide transaction, and "a fair purchase (427) in the understanding of mankind," which, from the context, obviously means an honest purchase at a fair price. Mr. Justice Aston, admitting that the full value need not be given, says that purchase was by no meansfair; and for that relies on the same ground of inadequacy of price, and on that only.
The same rule prevails in equity, where what is called a gross inadequacy of price is always fatal to the alleged purchase. This is not on a ground or doctrine peculiar to the Court of Equity, but is founded on the statute as interpreted at law, and for that reason adopted in equity. InMetcalf v. Pulvertoft, 1 Ves. and Bea., 183, it was insisted that the party was not a good purchaser to defeat a previous gift, because he gave only one-third of the value, and Lord Eldon not only expressed his assent to that proposition but founded his assent upon the doctrine as established at law, and cited to that purpose the case of Doe v. Routledge.
The principles established by the cases referred to are inconsistent with some of the opinions delivered by his Honor, and show that at least in refusing the instructions last prayed for by the defendants there was error. *Page 336 
It is indeed wonderful, under the instructions given, if understood as favorably for the plaintiffs as their terms will admit, that the jury could have found the verdict given in this case. We cannot conceive how anyone at all conversant with the motives and dealings of mankind, could look at this transaction as being anything else but a gift, under the simulated appearance, or, rather the assumed and unmerited name of a sale, or doubt that the price was not the real inducement with Falls, but only to give color to the transaction. We should suppose that the jury had drawn conclusions from the instructions not contemplated by his Honor, were it not that the verdict was allowed to stand. Thence it is to be presumed that it was approved by the court, and if so, then the instructions were, in our opinion, erroneous, not only as they were understood by the jury, but as they were meant to be understood.
(428) We think clearly that the jury was misdirected when told that inadequacy of price, of itself, was not in any case fatal to the transaction, as preventing its being a purchase within the statute; and also that the court erred in refusing to direct the jury that a "great inadequacy of consideration" was thus fatal. If the jury had been so advised, the result of their deliberations must have been different from what it was. With the error of the jury, so far as it is exclusively theirs, this court cannot deal, but so far as it was, or might have been induced by the court, it is our duty to correct it. In our opinion it ought to have been laid down as the rule of law, that if the consideration was grossly and manifestly inadequate it was not a good purchase, but that, to constitute such a purchase good faith and a fair price are requisite.
We go further and say that, in our opinion, the court might have safely said, and therefore ought to have said, that the plaintiff in this case wasnot a purchaser within the statute.
Against such a direction as this last it is urged, as it has often been before, that fraud and good faith are questions of intent, and, therefore, proper for the jury, whose province it is to look into the mind and heart. The correctness of the proposition, as a general one, is not controverted, but we think it is not to be carried to the absurd extreme of cutting off the court from drawing from admitted facts any inference, however consonant to reason and necessary it may be. We have seen that upon this very question the courts both of Law and Equity, have laid down rules, as laws for the parties, and in the same or similar cases it ought again to be done. This very case is an instance of the mischief of leaving at large to the jury a question of this sort, on which to some extent at least, and to most, if not all useful purposes, a certain rule can be propounded as matter of law, applicable with unchangeableness to all similar cases. It is no objection to this, that no rule can be laid down which will be decisive of every case. However much it may perplex the *Page 337 
mind to attempt beforehand to trace the precise line of demarcation between the provinces of the court and jury so that in every case each body may perform its appropriate function, yet that ought not to prevent its being done in any case; and as far as it is practicable to lay down a rule as that of the law, it ought to be done. At all events, we have no difficulty in excluding this plaintiff from the protection (429) of the statute. The price paid by him will not entitle him to supersede a former alienee, on the ground that such former alienee paidnothing. If the same thing cannot with strict truth be said of him it certainly may that he paid next to nothing; and that, in reason and law, is the same thing in respect of those merits around which the statute meant to place a safeguard. This power of the court is not a novel assumption, nor can it prove practically dangerous or inconvenient. There will be differences of opinion as to the value of estates; also opposing evidence as to the price paid or agreed to be paid, and much allowance is to be made for the unwillingness of many men to lay out money unless they get a bargain, and likewise for their reluctance to purchase what is claimed by another and cannot be got by them without the trouble and expense of litigation. These are all proper considerations to be left to a jury and to be weighed by them, under proper information at the same time as to the law. We do not attempt to enumerate the cases in which the court should pronounce on the sufficiency of the consideration, nor undertake, in anticipation, to say how much less than the value will in every case be deemed inadequate. We think, indeed, that the statute did not mean that a donee should be disturbed unless by one who gave a solid price and such a one as shows that he bargained for and thought he was buying the land itself, and not the chance of gaining it at law. But it is easier and more discreet to confine ourselves to saying what will not do, as the cases arise, and not go beyond adjudged cases in laying down rules a priori.
Certainly, we think, the Court will not enter into the question of the inadequacy of consideration, as per se vitiating the sale, unless it be plain and great, or gross, as it is commonly called. We have seen that inUpton v. Basset a year's income was called a petty and inadequate consideration. In Doe v. Routledge, one-tenth part of the value would not sustain the conveyance. In Metcalf v. Pulvertoft, Lord Eldon thought one-third of the value too little; and so should we also think. Prices may range between the extremes of what close men would call a good bargain on one hand and a bad or even a hard bargain on (430) the other, and the law may not interfere. But when such a price is given, or pretended to be given, that everybody who knows the estate will exclaim at once, "why, he has got the land for nothing," the law would be false to itself if it did not say sternly, and without *Page 338 
qualification, to such a person, that he had not entitled himself to the grace and protection of the statute. It is obvious that there is no morality to vindicate the attempt on the part of a donor to defeat his gift by a sale for even a full price. Yet it is acknowledged that another may lawfully purchase from him and may hold, provided he be really a purchaser. Now, to make him such, it would seem clear that he must give such a price as thereby to create a conviction in an honest mind that the former donee ought to give up the land, or be deprived of it, rather than he should lose the money paid. Now, can that be said in this case? No. It is to be remembered that no facts are left in doubt here. The value of the land and the price to be given are admitted by the plaintiff or proved by his own evidence; and it thence appears, that the consideration was just onefive-hundredth part of the value. Surely, that consideration is so utterly and enormously inadequate as to make it a palpable fraud to attempt, under the pretence of it, to defeat a previous deed. How could the lessor of the plaintiff contend with a creditor of his bargainor? Suppose Falls to have been indebted in the sum of $25,000, and to have sold this estate — of that value — for this pitiful sum of $50. Would it require a moment's thought to arrive at the conclusion that such a sale could not stand against the creditor's execution? Why? Because the sale was not one for the value, nor for a sum that could be mistaken for the value by the parties or anyone else, or could be called so with a serious face. This case stands upon precisely the same reason, for he who is deemed a purchaser or a volunteer in the one case, must bear the same character in the other.
It is a mockery for the plaintiff to set up his lessor as a purchaser. The consideration is so very diminutive, so nearly nominal, as not to give even a color of fairness to the transaction as a purchase of the land. It would hardly pay for a ticket in a lottery for it on any common (431) scheme. It is, to the purpose now under discussion, the same as five shillings or a pepper corn. Each will make a conveyance formally sufficient as between the parties to it. But, neither will do, to turn that conveyance, which is really a gift, into a purchase, to the prejudice of third persons.
The judgment of the Superior Court is reversed and a venire de novo
directed.
PER CURIAM. Judgment reversed.
Cited: Harris v. De Graffenreid, 33 N.C. 92; Potts v. Blackwell,57 N.C. 60; Worthy v. Caddell, 76 N.C. 86; Shober v. Wheeler,113 N.C. 378; Monroe v. Fuchller, 121 N.C. 104. *Page 339