this will as established by the Supreme Court of the United States, this court should hold that Lucius C. Robert took a fee under the will, and that the construction given to the will by the Supreme Court of South Carolina in Robert v. Ellis was erroneous, and is not binding upon this court. The will may be said to be subject to different constructions as to the effect of clause 4 in connection with clause 14 and the language or characteristic expressions used in the rest of the will. By the terms of clause 4 Lucius C. Robert was not given an absolute fee upon the death of the testator. On the contrary, the lands therein devised to him are limited over by way of executory devise to others upon the happening of the two contingencies mentioned therein. Then comes the question of how far the estate given is also limited by the language of clause 14. The Supreme Court of South Carolina has given the will one construction. Any other construction suggested by the applicants for a new trial would be at the least very doubtful, and under such circumstances, it would be the duty of this court, in coming to its independent conclusion, to lean for the sake of harmony to an agreement with the State Supreme Court, and not import into the law by the construction of this will the discordant element of a substantial right which is protected in the same state in one set of courts and denied in the other.

It is accordingly ordered that the applications for new trials be refused.

Frank R. Frost, of Charleston, S. C., and Joseph S. Clark, of Philadelphia, Pa., for plaintiffs in error.

Benj. H. Rutledge, of Charleston, S. C., for defendants in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

---

CLINCHFIELD COAL CORPORATION v. STEINMAN.

(Circuit Court of Appeals, Fourth Circuit. November 11, 1913. On Rehearing, March 6, 1914.)

No. 1173.

1. VENDOR AND PURCHASER (§ 243*)—BONA FIDE PURCHASER—ADMISSIBILITY OF EVIDENCE—CONSIDERATION PAID.

In an action of ejectment, where plaintiff claimed the land as a purchaser for a valuable consideration without notice of a prior conveyance, evidence that the price he paid was grossly inadequate was admissible on the question of his bona fides and want of notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 606–608; Dec. Dig. § 243.*]

2. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER—NOTICE—RECORD INDEX.

Where a plaintiff in ejectment testified that when he purchased the land in suit he knew that titles in the locality were generally defective, and for that reason employed an attorney to examine the records, entries in the index to the deed records of the county, referring to the record of a decree establishing the validity of a lost deed to the land made by plaintiff's grantor, which decree was entered for record more than a year be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fore plaintiff's purchase, were admissible in evidence to charge plaintiff with notice of the prior conveyance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

### On Rehearing.

3. JUDGMENT (§ 292*)—CONSTRUCTION AND OPERATION—"DECREE FOR RECOVERY OF LAND."

Code Va. 1904, § 2510, requires the clerk of a court wherein any judgment or decree is entered for the recovery of land to transmit a copy of such judgment or decree to the clerk of the court of each county in which the land is situated, and requires the latter to record the same in his deed book. A judgment creditor brought a suit in equity against his debtor and another to establish a lost deed by which land had been conveyed to the debtor by his codefendant and to enforce his judgment against the land, which in Virginia cannot be done in any case except by suit in equity. The result was a decree establishing such lost deed as a valid conveyance of the land which was therein described. *Held*, that such decree was one for the recovery of land, within the meaning of the statute, and was properly recorded thereunder. as a muniment of the debtor's title.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 572; Dec. Dig. § 292.*]

4. WORDS AND PHRASES—"RECOVERY."

"Recovery," as a legal term, does not necessarily or usually mean the act by which the title or right of possession is acquired; but its more common signification is the final adjudication that the title or right of possession was before acquired, and of right belongs by virtue of the previous acquisition to the party in whose favor the decree is made.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6019, 6020.]

5. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER—NOTICE—INDEX TO DEED RECORD.

Entries appeared in the index to a deed record as follows:

"Fleming, Phillip and wife v. (Decree)·Jas. A. Collier, page 19."

"Collier Jas. A. deed from P. Fleming, page 19."

*Held*, that such entries were sufficient to put a subsequent purchaser on inquiry and to charge him with notice of the contents of the instrument recorded on page 19.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

6. RECORDS (§ 8*)—RECORD OF TITLES TO LAND—INDEX.

The index to a deed record is as much a part of such record as the record of the instruments themselves.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 4; Dec. Dig. § 8.*]

Waddill, District Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

At Law. Action by A. J. Steinman against the Clinchfield Coal Corporation. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action of ejectment instituted by the defendant in error, A. J. Steinman, in the District Court of the United States for the Western District of Virginia, against the plaintiff in error, the Clinchfield Coal Corporation, to recover all the bituminous and other mineral, iron ore, and all other minerals, except manganeses, and all the fire clay, in, under and upon a cer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tain parcel of land in Dickenson county, Va., together with exclusive rights of mining, shafting, tunneling, erecting buildings, for mining and manufacturing, of constructing wagon roads, railways, depots, and houses, of cutting timber, of using stone and water for all purposes, and of depositing dirt and refuse matter, as fully set out in the declaration.

The plaintiff in error will be referred to as defendant, and the defendant in error will be referred to as plaintiff, such being the respective positions they occupied in the court below.

The plaintiff offered in evidence the following chain of title: Deed from Phillip Fleming to A. J. Steinman and J. D. Price, dated December 18, 1874, and recorded on December 21, 1874. Deed from J. D. Price to A. J. Steinman, dated December 31, 1874, and recorded November 4, 1875.

The plaintiff, in order to avoid the necessity of tracing his title back to the commonwealth, relied upon Phillip Fleming as being the common origin or source of title of both the plaintiff and the defendant, and claimed that, although the rights of the defendant appear to have originated first from the alleged common source, he was entitled to recover as an innocent purchaser for value without notice of such prior rights. And in order to show that plaintiff and defendant claimed title from a common source, plaintiff offered in evidence the following papers as links in the chain of defendant's title:

"(a) Three decrees in the chancery cause of Lipps v. Collier, Phillip Fleming, and others, dated, respectively, October 23, 1872; May 22, 1873, and April 5, 1874, the second of which decrees, admitted to record in the Deed Books of Wise county on June 3, 1873, finds that a deed executed by Phillip Fleming to James A. Collier properly acknowledged, conveying the land in controversy, had been lost, and decrees that Collier shall hold the land free from all claims of Fleming, and orders that this decree shall be recorded and indexed in the deed book of the county, which was accordingly done more than a year prior to the conveyance from Fleming to A. J. Steinman and Price.

"(b) Deed from James A. Collier to John Riner, dated May 3, 1869, and recorded September 30, 1869 (three years prior to the first decree in case of Lipps v. Collier and five years prior to conveyance to Steinman), purporting to convey only 'all of the right and title which he had in and unto all the real estate which he (Collier) owns or in which he had any interest in Wise county.

"(c) Deed from John Riner, trustee, to Patrick Hagan, dated October 10, 1886, purporting to convey the land by its bounds, and referring to it as the same mentioned in a decree 'in a chancery cause lately determined wherein the said Collier was plaintiff and said Fleming defendant.'

"(d) Deed from Patrick Hagan to Bond & Bruce, dated March 1, 1905, purporting to convey the coal, certain mining and timber rights, and all his interest in the tract described by its bounds, containing 417.45 acres, and mentioned as 'being the same tract which was conveyed to Patrick Hagan by T. G. Wells by deed recorded in Deed Book 6, p. 269.'

"(e) Deed from Bond & Bruce to Clinchfield Coal Company dated March 11, 1905, conveying only the coal and such rights and privileges as the grantors own under a tract described by bounds, containing 417.45 acres, and referring again to it as being the same conveyed to Hagan by Wells.

"(f) Deed from Clinchfield Coal Company to Clinchfield Coal Corporation [plaintiff in error], dated June 4, 1906, conveying such interest and rights as acquired by the last-mentioned deed from Bond & Bruce.

"(g) Deed from T. G. Wells to Elias Rose and from Rose to Patrick Hagan, conveying surface of 72 acres, about one-fifth of the area the coal under which is involved."

At the conclusion of the evidence on motion of counsel for plaintiff, the court directed the jury to return a verdict in favor of plaintiff for all the minerals, and each and every mining interest in the lands claimed by the defendants, as appears in the verdict and judgment; to the entry of such judgment defendant excepted, and the case now comes here on writ of error.

J. Norment Powell, of Johnson City, Tenn., and W. H. Rouse, of Clintwood, Va. (Powell, Price & Shelton, of Johnson City, Tenn., on the brief), for plaintiff in error.

R. T. Irvine, of Big Stone Gap, Va. (Irvine & Morison and J. F. Bullitt, all of Big Stone Gap, Va., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

PRITCHARD, Circuit Judge. In the case of Lipps v. Collier, Phillip Fleming, and others, it was alleged by the plaintiff, who brought the action as a judgment creditor and was seeking to subject the land to the payment of his judgment, that prior to that date Fleming had conveyed these lands to Collier, but that the deed had been lost or misplaced; the purpose of the action being to set up the lost deed in order that the plaintiff might subject the lands as the lands of Collier for the payment of his debt. Collier and Fleming answered, and, among other things, admitted that Collier was the true owner of the premises.

As we have heretofore stated, three decrees were entered in this suit, dated, respectively, October 23, 1874, May 22, 1873, and April 6, 1874, the second of which decrees recites that Phillip Fleming executed a deed to James A. Collier, which was properly acknowledged, conveying the land in controversy, and that the same had been lost, and decrees that Collier hold the land free from all claims of Fleming, and further provides that the same should be recorded and indexed in the deed book of the county. This decree was recorded and indexed on June 3, 1873, more than a year prior to the conveyance of Fleming to Price.

Notwithstanding the entry of this decree, Fleming executed a deed to A. J. Steinman and Price on the 18th day of December, 1874, purporting to convey the land in controversy.

However, plaintiff insists that at the time he took this deed from Fleming, he had no knowledge of the suit of Lipps against Collier et al., and that he did not have notice that Collier claimed to be the owner of the lands in controversy, and that therefore he is an innocent purchaser for value.

Defendant insists that the proceedings in the suit of Lipps v. Collier were duly entered upon record of the court, and that, in addition thereto, a copy of the decree, declaring Collier to be the owner of the lands now in dispute, was recorded in the clerk's office in pursuance of section 2510, Code 1904, which is in the following language:

"The clerk of the court wherein there is any partition of, or assignment of dower in, land under any order, or any recovery of land under judgment or decree, shall transmit to the clerk of the court of each county or corporation wherein such land is, or if the land lies within the corporate limits of the city of Richmond, to the clerk of the chancery court of the said city, a copy of such order, judgment, or decree, and of such partition or assignment, and of the order confirming the same, and along therewith such description of the land as may appear in the papers of the cause. And the clerk of the court of such county or corporation, or of the said chancery court, as the case may be, shall record the same in his deed book, and index it in the name

of the person who had the land before, and also in the name of the person who became entitled under such partition, assignment, or recovery."

The defendant further insists that a copy of this decree was registered and properly indexed; that if this was not sufficient to have put plaintiff upon notice as to defendant's rights, it was sufficient to put plaintiff upon inquiry as to the true facts, and if he had availed himself of the information thus afforded, as it was his duty to do, he could have ascertained that these lands did not belong to Fleming, but had been conveyed to Collier and those under whom defendant now claims.

There are numerous assignments of error, but we do not deem it necessary to refer to the first, second, third, and fourth, inasmuch as we are of the opinion that they are without merit.

[1] The plaintiff, Steinman, was introduced as a witness in his own behalf for the purpose of showing that he was an innocent purchaser for value from Phillip Fleming. Upon cross-examination he was asked:

"Q. Mr. Steinman, when you bought this and other tracts of coal in this country, did you or not know as a rule titles were defective? A. Yes, sir; and for that reason I was very careful to employ attorneys to examine all the titles. * * *"

Witness was then asked the following question:

"Q. Did your knowledge that the titles were generally defective and dangerous affect the price that you would pay for property?"

The plaintiff objected to this question. Counsel for defendant insisted that the question was relevant, and, among other things, stated that they expected to prove that titles in that section were generally defective and dangerous, which caused plaintiff to pay only small prices and to hazard only small amounts. The court sustained plaintiff's objection and the fifth assignment of error relates to the ruling of the court as respects this point.

While it is true that there is no direct evidence as to the value of this land in 1874, at the time plaintiff purchased it, yet it is alleged and admitted that at this time it is worth more than $2,000, and it was admitted by plaintiff that he only paid the sum of $125 when he purchased it. The fact that 1,000 acres were conveyed for $125 is, in our opinion, relevant upon the question as to whether plaintiff was a purchaser for value. This, taken in connection with the fact that the titles in that country were generally defective, would be some evidence for the consideration of the jury. According to plaintiff's admission, he was well aware of the fact that the titles to property in that section were more or less defective, and the further fact that he was only willing to pay the sum of $125 for 1,000 acres of land tends strongly to show that he realized, at the time he made the purchase, that he was taking a speculative risk, as to the validity of the title to the property which he was purchasing. Having testified that he had knowledge of the fact that titles were defective, it was competent for defendant to inquire as to whether the defective condition of titles did or did not affect the price that he paid for this property.

213 F.—36

In order that the plea that the plaintiff was a purchaser for value without notice should avail him, it was incumbent upon the plaintiff to show that he paid a fair value for the land and purchased the same without notice.

· While it is difficult to lay down any fixed rule by which the term "bona fide purchaser for value" is to be tested, we think that there is evidence in this record which, if true, excludes the plaintiff from that status. In Worthy v. Caddell, 76 N. C. 82, Pearson, C. J., says:

"The leading case (in N. C.) upon the subject 'what is a valuable consideration' (Fullenwider v. Roberts, 20 N. C. 420), covered only the meaning of the words, 'a purchaser for valuable consideration,' in the statute of 27th Eliz., as to subsequent purchasers, but the discussion, in the opinion, is extended to 13th Eliz., as to creditors. From that fountain we may drink. By it we learn that in order to protect himself against the claim of a prior donee, or of a creditor, the party assuming to be a purchaser for valuable consideration, * * * not up to the full value, but to a price paid which would not cause surprise, or make any one exclaim, 'he got the land for nothing, there must have been some fraud or contrivance about it.'" Harris v. De Graffenreid, 33 N. C. 89.

In determining as to whether a purchaser had had notice of any defect of title, inadequacy of price is a potent factor. In some instances, it has been held that gross inadequacy of price is, within itself, sufficient to put the purchaser on notice that the title is defective, and thus charge him with constructive notice. In any event, gross inadequacy of price should be considered, together with other facts, as tending to prove that the purchaser took title with notice of diverse rights or of defects of title. Webber v. Taylor, 55 N. C. 9; Fullenwider v. Roberts, 20 N. C. 420; Harris v. De Graffenreid, 33 N. C. 89.

The Supreme Court of North Carolina in the case of Cox v. Wall, 132 N. C. 730, 44 S. E. 635, quotes with approval from the case of Weber v. Rothchild, 15 Or. 390, 15 Pac. 650, 3 Am. St. Rep. 162, as follows:

"Here the defendant Rothchild has alleged facts in one part of his answer tending to show that he is a bona fide purchaser for value without notice of this property, but he has offered no evidence whatever on those issues. The plea of a bona fide purchaser for value, as here alleged, is an affirmative defense interposed by the defendant, and in this connection it is not perceived that it differs from other affirmative defenses. The party having the affirmative of the issue must offer evidence to support it. Another rule of law equally elementary which is frequently applied in such cases, is that when a fact is peculiarly within the knowledge of a party, he must furnish the necessary evidence of such fact."

Also in the case of Bugg v. Seay (1908) 107 Va. 648, 60 S. E. 89, 122 Am. St. Rep. 877, the court said:

"If a party claiming to be a purchaser of land for a valuable consideration without notice of a prior unrecorded conveyance can maintain an action of ejectment against the grantee therein, he can only do so by showing that he received his conveyance and actually paid the purchase money before he had notice of the prior unrecorded deed. Such proof is necessary in a court of equity, where the protection of a bona fide purchaser for value without notice is usually set up as a defense (Lamar v. Hale, 79 Va. 147, and cases cited; Wasserman v. Metzger, 105 Va. 744, 54 S. E. 893, 7 L. R. A. [N. S.] 1019, and cases cited; 2 Min. Inst. [4th Ed.] 767, etc.; 1 Perry on Trusts [5th Ed.] § 219); and, a fortiori, less proof would not be required of the plaintiff

in an action of ejectment seeking to recover the land in the possession of the grantee in the prior unrecorded conveyance."

Plaintiff relies upon the defense that he was a bona fide purchaser for value without notice, and the burden is upon him to disclose such information as he may possess touching the facts upon which he relies to sustain his contention.

For the reasons stated, we are of the opinion that the court below erred, in refusing to submit this testimony to the jury.

[2] The sixth assignment of error is directed to bill of exceptions numbered 7 (bill of exceptions numbered 6, being abandoned). As we have stated, plaintiff testified that before purchasing the land in controversy, he employed Judge G. W. Kilgore, an attorney, to examine the title and report upon it. The defendant offered Judge Kilgore as a witness and proved by him that if he did examine the title, as to which he had no recollection, he looked in the index of deed books concerning the title, and that this was his invariable custom, and that the title could not have been examined without doing so. This evidence was offered for the purpose of showing that Steinman's attorney, while engaged in the examination of the titles, saw the index, if indeed he did not see the record itself, and that this was sufficient to put him upon inquiry, and that therefore Steinman was charged with notice of all that equity which it would have availed, and that he could not now claim to be an innocent purchaser.

The defendant then offered certified copies from index of Deed Book No. 3, from the county records of Wise county, in which the decree recited in the deed from Fleming to Collier was recorded; the copies in question are as follows:

"Fleming, Phillip and wife v. (Decree) James A. Collier, page No. 19."
"Collier, James A. from deed P. Fleming, page No. 19."

Plaintiff objected to the introduction of these copies from the index upon the ground that the decrees in question were entered in the suit of Morgan T. Lipps v. James A. Collier, and not a suit of Phillip Fleming against James A. Collier, and that it is not shown when this index and decree was put on the book, and the index is not a record, but merely a notation pointing to the record.

The defendant insists that the court erred in sustaining the objection to the introduction of this evidence, in that the attorney, who was employed by the plaintiff to examine and report upon the title, saw these entries in the book where deeds and records were recorded, and that they informed him that there had been a decree concerning the land in a suit between Fleming and Collier, to be found on page 19, and that if he looked at page 19, he found the decree entered fully, and that it cannot be presumed that he did not look, and that therefore plaintiff is charged with notice of all the decree shows, and is not therefore an innocent purchaser.

As we have stated, Judge Kilgore says that he has no recollection of having made an examination of the title of Phillip Fleming for the plaintiff, but was not willing to testify positively that he had not made such an examination. He admits that he examined titles for

the plaintiff and Price, and says that he supposed he kept a memorandum of the same, but it was destroyed at the time his house was burned. He also testified that in 1874, the deeds in Wise county were not kept up and indexed as now, but that he is not prepared to say that this deed was not indexed at the time the examination was made. The evidence of Judge Kilgore, owing to the lapse of time, is not very clear, and we can appreciate how an attorney actively engaged in the practice is liable to forget many of the transactions incident to the work in which he is engaged, but it seems highly improbable that attorneys representing purchasers and examining titles in this country would not have known of the existence of the pendency of a suit of this character. The plaintiff testified that Kilgore was his attorney, and that he made an examination of these titles while acting as attorney. For this purpose Kilgore stood in the shoes of the plaintiff, and the plaintiff is bound by anything that he discovered, or by the exercise of ordinary diligence could have discovered, as respects the ownership of these lands, and it is a significant fact in this connection that Mr. Irvine, an attorney for plaintiff in this action, when he came to examine the records of the county where this land is situated, had no difficulty in finding this decree from the index, copies of which are now offered in evidence.

The second paragraph of the copies offered is in the following language:

"Collier, James A. from deed P. Fleming, page 19."

It was from this entry that Mr. Irvine readily found the decree entered in the suit of Lipps against Collier, Fleming and others.

We think that upon the admitted facts and the record evidence which was excluded in this case the purchaser was put upon notice, that is, that the record showed a condition which should have caused a reasonably prudent man to have examined the same in full. This opinion is based upon the manner in which the judgment was indexed, and the further fact that the purchaser knew that titles in that section were defective, and purchased the land at a nominal sum when compared to its value. The evidence excluded should have been admitted, and its exclusion requires that the cause be remanded for a new trial.

For the reasons stated the judgment of the lower court is reversed, and the cause is remanded for further proceedings in accordance with the views herein expressed.

Reversed.

WADDILL, District Judge, dissents.

## On Rehearing.

PRITCHARD, Circuit Judge. The above-entitled case was decided at the last term of this court. A petition for rehearing was filed on the 13th day of December, 1913, and granted. The petition for rehearing is based upon several grounds.

It was insisted in this petition, and in the argument, that the court

had overlooked the decisions of the Court of Appeals of Virginia bearing upon the question of the burden of proof as to notice to Steinman in respect to the condition of the title at the time he purchased and took his conveyance. This question was not clearly presented, nor was it referred to in the briefs, nor upon the argument, in the first hearing. The court, following a line of decisions in other states (the Virginia cases not having been called to its attention), adopted the view expressed in the opinion. It was not, however, material nor in any way determinative of the decision of the assignments of error upon which the decision was based; they relating to the question as to the admissibility of evidence. Upon a reargument, counsel for defendant in error cited and called to our attention a line of decisions of the Court of Appeals of Virginia, which are of controlling authority in this case, to the effect that the burden of proof is upon Steinman personally to show that he was a purchaser for value, as defined by the court in Lamar v. Hale, 79 Va. 147, in which it is said:

> "To maintain the first-named defense it is essential that the alienees aver and that it appear that they are: (1) Purchasers for a valuable consideration; (2) that the consideration has been actually paid; (3) that they have received, or are best entitled to receive, a conveyance of the property; and, lastly, that these three essentials have all occurred prior to their having had notice of G. B. Lamar's claims upon the property in question. The burden of establishing the first three is on the alienees. The onus of affecting them with notice of his claims is on Lamar."

Thus it appears that if Steinman shall by competent evidence satisfy the jury that he is a purchaser for value, as defined by the court, the burden shifts to the plaintiff in error to show that at the time Steinman became the purchaser for value he had notice of the condition of the title to the land.

This court, in its former opinion, held that the lower court was in error as respects the question raised by the fifth assignment of error which relate to the ruling of that court in excluding the testimony of the witness, Steinman, as to the knowledge which he had, bearing upon the question as to the defects in this and other titles in that section. We are still of the opinion that this evidence was competent and should have been submitted to the jury.

It is further insisted in the petition for rehearing that this court is in error in holding that the certified copy of index from Deed Book No. 3 of the records of Wise county should have been admitted as evidence by the court below. After a careful consideration of the petition and argument of counsel we are disinclined to interfere with our former ruling upon this point.

It is also insisted that this court was in error in reversing the lower court on the question presented by the fifth and sixth assignments of error. While we have considered the cases relied upon to sustain the same, nevertheless we are of opinion that the evidence, rejected by the lower court, upon which these assignments are based, was competent and should have been submitted to the jury.

It is contended by counsel for plaintiff in error that the rights of "Collier and those claiming under him, as against Fleming and those claiming under him, rest upon the decree and not upon the deed," and

that the deed and all other grounds upon which Collier claimed this land against Fleming had merged in the decree prior to the time when any rights of Steinman had attached. Counsel quotes Beazely v. Sims, 81 Va. 648, in which it is said that "the deed is drowned in the judgment and must henceforth be regarded as functus officio." It is further insisted that the parties and their privies could assert no claim against each other founded upon the existence or nonexistence of the deed, and that whatever right they had was based upon the decree. Counsel in support of its contention cites the case of Sheridan v. Andrews, 49 N. Y. 478, 482, in which the Supreme Court of that state said:

"It never was pretended that any notice was necessary to render the judgment effectual as against parties claiming under the defendant by transfer subsequent to the judgment. Campbell v. Hall, 16 N. Y. 579, 580. The judgment disposes of the rights of the parties and is a matter of public record. Its effect cannot be impaired by any subsequent transfer by the defendant. He is concluded by it, and his grantee cannot be in any better situation than the party from whom he obtained his right. Bacon's Ab. Evidence, 'f.' The recording acts have no relation to the subject."

However, we do not deem it necessary to pass upon this point, inasmuch as section 2510 of the Code of Virginia of 1904, among other things, provides for the recordation of judgments and decrees for the recovery of land. This section being quoted in the opinion of this court heretofore filed, we do not consider it necessary to incumber this opinion by quoting it again.

[3] It is contended by counsel for plaintiff in error that the decree in the case of Lipps against Collier and Fleming, to which we have referred, is a decree for the recovery of land, and that it was registered and properly recorded in pursuance of the provisions of this statute.

It is, on the contary, insisted by counsel for defendant in error that this is not a decree for the recovery of land, and therefore not entitled to be recorded by virtue of the provisions of this act. It is not denied that at the time the suit of Lipps against Collier and Fleming was instituted that the deed which had been made to Collier was lost, and that Collier had no existing paper title of any kind whatsoever for the lands in controversy. At the time of the institution of that suit Lipps, the judgment creditor, was confronted with the fact that Collier, against whom he had a judgment, had lost the deed for the land which he owned, and, for reasons that are obvious, took no steps to compel Fleming, his grantor, to execute another deed in lieu of the one that was lost, or to secure a decree establishing the fact that he was the true owner.

Under the laws of Virginia a judgment creditor cannot subject the land of the judgment debtor to the payment of his debt without invoking the aid of a court of equity, and in this instance this would have been true, even if Collier had had a deed for this land. However, in this instance there are two reasons why the judgment creditor was compelled to seek relief in a court of equity. In the first place, it was necessary in order to set up the lost deed, and thereby vest the legal title in Collier, and to establish the boundary lines of the tract in ques-

tion. Second, as we have stated, he could not subject the land to the payment of his debt by securing a sale of the same under judgment without first obtaining authority for such sale from a court of equity.

The judgment debtor having failed to institute suit for the purpose of setting up the lost deed, the judgment creditor had a right to go into a court of equity, for and on behalf of the judgment debtor, to secure a decree establishing his right to hold these lands. In other words, in so far as the suit pertaining to the setting up of the lost deed was concerned, the judgment creditor, when he entered a court of equity, stood in the shoes of the judgment debtor and asserted a right which the judgment debtor could have enforced if he had so desired, to wit, the establishment of the fact by decree that he was the true owner of the lands described in the lost deed.

What is the effect of the decree thus entered in favor of Collier? If this is not a decree for the recovery of land, and therefore not entitled to be registered in the deed book, then Collier would be precluded from putting on record the only evidence of title he had to the land in controversy. We are loath to believe that under the laws of Virginia he would be denied this right. The court decreed that he was the true owner, and further decreed that these lands be sold for the payment of the judgment in favor of Lipps. In the pleadings in that cause it was alleged and admitted that Collier was the true owner; therefore it seems to us that the decree in question was eminently proper. Fleming having admitted that he had already executed to Collier a deed, at most, Collier could only ask the court to decree (in view of the fact that the deed was lost) that he was the true owner, and thereby enable him, in perfecting his title, to use the same as a muniment thereof. It is certainly the only paper title upon which he and those claiming under him can rely as against Fleming and those claiming under him.

As we have already stated, section 2510 of the Code of 1904 provides, among other things, that the clerk of the court wherein there is any partition of or assignment of dower in land, under any order or any recovery of land under judgment or decree, shall transmit a copy of the same to the clerk of the court of such county or corporation or of the chancery court, as the case may be, and the clerk of such court shall record the same in the deed book, etc.

[4] Does the decree in his instance fall within the provisions of this statute? To hold that an adjudication in favor of A. in a suit between A. and B. to test either title or right of possession is not a recovery of real estate would be to mistake form for substance. The statute is sufficiently broad in its language to cover the purpose in view, namely, to require judgment settling the title or right of possession to real estate to be recorded. "Recovery," as a legal term, does not necessarily or usually mean the *act* by which the title or right of possession is acquired; but, on the contrary, its more common signification is the final adjudication that the title or right of possession was before acquired, and of right belongs, by virtue of the previous acquisition, to the party in whose favor the decree is made. One of the definitions in 34 Cyc. 764, is:

"The obtaining of right to something by verdict and judgment of a court from an opposing party in a suit."

Webster's definition is the same. Thus it is apparent that the term used in the statute should be given the comprehensive meaning of the establishment by judgment of the right to land, and not the act of acquiring or regaining possession or acquiring title.

But even if the word "recovery" could be limited in meaning to the act of regaining possession or the acquisition of title by a judgment of the court, the judgment rendered, that one of the parties had parted with his title and that the other had acquired it, necessarily implied the recovery of possession. This well-known principle is thus stated in Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123:

"It is said, however, on behalf of the appellant, that the original decree only undertook to remove the cloud upon the title, and did not deal with the subject of possession of the premises, and that the present bill, in seeking to have possession delivered up, purposes to deal with what was not concluded by the former decree. This is manifestly a misconception of the force of the original decree, which established and concluded Morton's title as against any claim of the appellant, and thereby necessarily included and carried with it the right of possession to the premises as effectually as if the defendant had himself conveyed the same. The decree in its legal effect and operation entitled Morton to the possession of the property, and that right passed to appellee as privy in estate."

[5] It is further insisted by counsel for defendant in error that, even if this be a decree for the recovery of land, it was not properly indexed, and therefore is not constructive notice to subsequent purchasers. The decree was indexed as follows:

"Fleming, Phillip and wife v. (Decree) Jas. A. Collier, page 19."
"Collier Jas. A. deed from P. Fleming, page 19."

It will be observed that in the first instance the reference is to a decree, and in the second instance to a deed. Under these circumstances, one searching the records could have had no other impression than that there was a decree or deed on record from Phillip Fleming to Collier. In the case of Coles v. Withers, 33 Grat. 186, the Supreme Court of Virginia said:

"It is the duty of the party to examine the records; * * * but, whether he does so or not, he will be affected with notice of every fact the knowledge of which might there have been obtained."

Black on Judgments (2d Ed.) vol. 1, § 406, in reference to this subject, says:

"A subsequent purchaser is affected with such notice as the index entries afford; and if they are of such character as would induce a cautious and prudent man to make an examination, he must make such investigation, or the failure to do so will be at his peril. * * * The principal object of an index is to afford information concerning judgment debtors and the liens on their property; it is generally held that subsequent purchasers and incumbrances will be charged with notice of a judgment which is correctly indexed under the name of the defendant, although the plaintiff's name may be placed under the wrong letter, or not indexed at all. But the entry of the judgment must be placed under the letter which begins the defendant's surname, not under the initial of his first name. It is not necessary to specify the character in which the parties sued or defended; the law is sufficiently complied with by placing the defendant's name in its proper alphabetical position, followed by the plaintiff's name, though neither party is designated as defendant or plaintiff, and though neither the word 'versus' or 'against,' nor any abbreviation thereof, is placed after their name."

[6] While it may be that the indexing of this deed is not strictly in conformity with the provisions of the statute, yet we are of opinion that the manner in which it was indexed was sufficient to notify even. a casual observer that there was a decree on page 19 entered in a suit to which Phillip·Fleming and wife on the one hand and Collier on the other were parties, and that a decree had been entered therein, and, being an index to the deed book, it was but natural to infer that it related to lands. In the second index it appears that there was a deed on page 19 of the record (the same page referred to in the first instance) in which P. Fleming was the grantor and Collier the grantee. Thus we have two entries in the index, both of which point unerringly to page 19 of the record, where the decree in question was recorded. Not only is this true, but we have the further fact, as stated in the former opinion of this court, that Mr. Irvine, who made an examination of the records after this suit was instituted, had no difficulty in discovering the decree in question. This identical decree was introduced in the court below for the purpose of showing that plaintiff and defendant claimed under a common source. How the attorneys managed to introduce the record, without also introducing the index, we are unable to say, unless it was due to the fact that counsel for defendant in the court below failed to enter an objection to the introduction of the decree alone. The index is as much a part of the record as the decree itself.

After considering the argument of counsel upon this point, we have reached the conclusion that this was a decree for the recovery of lands, and as such was properly recorded, and that it stood on the same footing as a deed properly recorded under the section in question. Therefore in this case it serves two purposes, the first of which was disposed of in the former opinion of this court, wherein we held that the index was sufficient to put the defendant in error upon inquiry as to the existence of this decree. Second, we think the lower court was in error in holding that this was not a decree for the recovery of land, entitled to be registered under the provisions of this section, and therefore constructive notice to subsequent purchasers.

For the reasons stated it follows that the judgment entered by this court on November 15, 1913, reversing the judgment of the lower court and remanding the cause for a new trial, is hereby reaffirmed.

WADDILL, District Judge, dissents.