963 F.2d 368
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John W. FLINT; Marion D. Flint, Defendants-Appellants.
Joseph R. PERRY; Lorraine R. Perry; The United Carolina
Bank; Equitable Life Assurance Company,
Defendants-Appellees.
 No. 91-1840.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 7, 1992
Decided: May 22, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-89-181-M)
 Argued: Terry Goodwin Harn, Chapel Hill, North Carolina, for Appellants.
 Samuel Robert Lyons, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.
 On Brief: James A. Bruton, Acting Assistant Attorney General, Gary R. Allen, William S. Estabrook, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and SPROUSE and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal presents two questions: (i) did the district court err in holding on summary judgment that appellants' transfer of real property was a fraudulent conveyance? (ii) did the district court err in rejecting appellants' motion for Rule 11 sanctions? We answer "no" to both questions, and affirm.
 
 
 2
 * In 1977 John and Marion Flint, who are husband and wife, invested in Trinity Properties, Inc., a tax shelter. The investment permitted them to claim deductions on their income tax returns for "advance minimum coal royalties." Not long after the Flints invested in Trinity Properties, the Internal Revenue Service (IRS) began an investigation to examine the legitimacy of the tax shelter.
 
 
 3
 In October 1980, while the investigation was pending, the Flints entered into an agreement to transfer real property (their residence) to a newly created trust, the Parview Limited Trust (Parview Trust). Simultaneously, the Flints agreed to lease back the transferred property from the Parview Trust. In January 1981, in accordance with these agreements, the Flints executed and recorded a deed transferring the property to the Parview Trust. After the conveyance the Flints continued to reside at the subject property. They also continued to pay the mortgage, real estate taxes, homeowners insurance, and utilities on the property.
 
 
 4
 Meanwhile, the IRS investigation culminated in a decision to deny all deductions taken in connection with the Trinity Properties investment. As a result, in April 1982, the IRS sent the Flints tax deficiency notices totalling $213,945.24 for the years 1977-1982. Eventually a default judgment was entered against the Flints, after which the United States initiated this action to set aside the conveyance of the Flints' residence to the Parview Trust. The complaint sought declarations to the following effect: (i) the Flints are the owners of their residence; (ii) the purported conveyance is null and void; (iii) the federal tax liens properly may attach to the Flints' interest in the property; and (iv) the property may be sold pursuant to 28 U.S.C. §§ 2201, 2202 (1988) to satisfy the Flints' outstanding tax debts.
 
 
 5
 Cross motions for summary judgment were filed, as was a motion by the Flints for Rule 11 sanctions. The district court granted the United States' motion and rejected both of the Flints' motions. The Flints appealed.
 
 II
 
 6
 A federal tax lien arises upon assessment for unpaid taxes, and it attaches to all property belonging to a taxpayer. See 26 U.S.C. §§ 6321, 6322 (1988). Ordinarily a tax lien does not attach to property that a taxpayer has transferred and that no longer belongs to him. But if a taxpayer fraudulently disposes of property before a federal tax lien is imposed, the United States may seek relief under the applicable fraudulent conveyance laws of the state in which the property is located, in this case North Carolina. See Commissioner v. Stern, 357 U.S. 39 (1958).
 
 
 7
 At issue then is whether the Flints' transfer of their residence amounts to a fraudulent conveyance under North Carolina law. A transfer is fraudulent, according to one test followed by that state's courts, if the grantor was paid insufficient consideration for the property and was insolvent at the time he transferred it. North Carolina Nat'l Bank v. Evans, 250 S.E.2d 231, 233 (N.C. 1979); Aman v. Waller, 81 S.E. 162, 164 (N.C. 1914). Applying that test, we think the district court correctly set aside the Flints' 1981 transfer of their residence.
 
 
 8
 First, the Flints have not shown that they received sufficient value for the transfer. Under North Carolina law, the consideration required is more than a mere "peppercorn." It must represent a " 'fair and reasonable price, according to the common mode of dealing between buyers and sellers.' " Evans, 250 S.E.2d at 234 (quoting Fullenwider v. Roberts, 20 N.C. 420 (1839)). In this instance the deed of trust bears no indication that the Flints received any consideration in exchange for the transfer. Attempting to rebut this point, the Flints claim to have received consideration in the form of"certificates," which entitled them to receive the property upon dissolution of the Parview Trust. This argument has two flaws. To begin with, the certificates are not in the record. Thus no record evidence contradicts what the face of the deed suggests: the Flints received nothing in return for the transfer. Even if we assume that the certificates exist, no tenable argument has been made that they qualify as a "fair and reasonable price." All that the certificates purport to do is give the Flints the right to receive the property when the Parview Trust terminates. As such, they have "value" only as a retained interest in the property of the Parview Trust, nothing more. Thus they do not qualify as sufficient consideration for the conveyance.
 
 
 9
 Second, the Flints have not shown that they were solvent when the conveyance occurred, or at least established a factual dispute on this point. They argue that they had $75,258 in assets and only $21,700 in debts at the time of the transfer.[1] Yet even if we treat the Flints' assessment of these assets as accurate, their debts still exceeded assets. That is because their calculation of debts focuses solely on federal tax debts, not, as it must, on the general category of "thenexisting debts." Edwards v. Northwestern Bank, 250 S.E.2d 651, 659 (N.C. App. 1979). In addition to federal tax debts, the Flints had incurred other obligations at the time they transferred their residence to the Parview Trust. For example, they remained personally responsible for a primary mortgage ($45,000) and a secondary mortgage ($27,168) on their residence. Adding these debts to their tax debts, the Flints at a minimum had a total debt of $93,868 at the time of the conveyance. That amounts to $18,610 more than their assets, making them insolvent at the time of the transfer.[2]
 
 III
 
 10
 The Flints next argue that the district court erred in rejecting their motion for Rule 11 sanctions. Appellate review of a district court's denial of Rule 11 sanctions is quite limited. Reversal is appropriate only if the district court abused its discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990). The Flints base this motion principally on the fact that the United States purported to quote the language of a North Carolina statute in one of its district court briefs, when in fact what it quoted was the holding of a North Carolina case. In our view, an erroneous-and apparently unintentional-characterization of a source of legal authority is not the sort of sharp practice that requires an appellate court to curb a district court's exercise of discretion. In short, the court did not abuse its discretion in rejecting this argument or any of the other arguments relied upon by the Flints in support of their motion for Rule 11 sanctions.
 
 
 11
 For the foregoing reasons, the judgment of the district court is
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 The Flints also refer to the fact that after they transferred the property to the Parview Trust, they borrowed $43,490.23 using the property as collateral. They rely on this fact for the proposition that the equity in the transferred property remains an asset relevant to the determination of their solvency. That is mistaken. Either the Flints transferred the property to the trust or they did not. If the conveyance was made, then the property lacks value as an asset; if it was not, then the federal tax liens may properly attach to the property. But in neither event does this argument advance their position
 
 
 [2]
 The Government also argues, as it did before the district court, that the conveyance should be deemed fraudulent under an additional test adopted by the North Carolina courts: insufficient consideration was received for the transfer, and the transfer was intended to hinder or defraud creditors. See Aman, 81 S.E. at 164. As we are convinced that summary judgment was appropriate under the test just discussed, it is not necessary to address this additional ground for decision