[Civ. No. 4426. Second Appellate District, Division One.—July 7, 1923.]

## W. N. MILLER et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[1] CERTIORARI — CONTEMPT PROCEEDINGS — JURISDICTION—EVIDENCE.— Assuming that both the affidavits and the order in a contempt proceeding are sufficient in their contents to sustain the jurisdiction of the court in that proceeding, nevertheless on writ of *certiorari* the reviewing court may examine the evidence upon which the order was based in so far as such evidence applies to or affects the question of jurisdiction.

[2] ATTACHMENTS—WRONGFUL HOLDING BY SHERIFF—POWER OF SHERIFF TO RELEASE — CONCURRENT SEIZURE UNDER CLAIM AND DELIVERY ORDER.—Where a sheriff acting in good faith has satisfied himself that he is wrongfully holding under attachment personal property that is not the property of the defendant in attachment, it is within his power (subject to his liability to the attaching plaintiff if the release proves to have been wrongful) to release such property from the attachment; and concurrently with such release, the sheriff has authority to seize the same property under an order in claim and delivery.

[3] RECEIVERS—POSSESSION OF PROPERTY BY SHERIFF—RIGHT TO ATTACK—CONTEMPT.—Where the sheriff has taken possession of personal property in an action in claim and delivery prior to the appointment and qualification of a receiver in a different action to take possession of that and other property, such receiver is not in a position to attack the validity of that possession by the sheriff; nor can the court do so by contempt proceedings in the receivership case.

63 Cal. App.—1       (1)

[4] ID. — POSSESSION OF SHERIFF IN CLAIM AND DELIVERY ACTION — RIGHT TO REDELIVERY—SUBROGATION.—The possession of the sheriff in a claim and delivery action is the same in effect as if the plaintiff in that action is in actual possession, through the sheriff as his agent, subject only to the right of the defendant in that action (within the time prescribed by section 514 of the Code of Civil Procedure) to obtain redelivery of the property by giving to the sheriff the necessary redelivery undertaking; and a receiver, upon his subsequent appointment and qualification in a different action, becomes subrogated to the same right of said defendant to obtain such redelivery by giving said undertaking.

[5] ID.—RIGHT TO POSSESSION—TIME EFFECTIVE.—The right of a receiver to the possession of property becomes effective only upon his qualification and after possession taken, and does not relate back to the time of the order for his appointment.

PROCEEDING in Certiorari to review an order of the Superior Court of Los Angeles County adjudging petitioners guilty of contempt. Ralph H. Clock, Judge. Order annulled.

The facts are stated in the opinion of the court.

Joseph C. Burke and Robert B. Camarillo for Petitioners.

Cooper, Collings & Shreve for Respondents.

CONREY, P. J.—This is a proceeding in *certiorari* to review an order of the superior court whereby the petitioners were adjudged guilty of contempt, and were ordered to return to a receiver certain property taken by them (so the court held) from his possession.

The proceeding in the superior court against the petitioners was initiated by the filing of affidavits charging that petitioners by certain acts willfully interfered with Willard L. Goodwin in the discharge of his duties with respect to property in his charge and possession as receiver of said property in certain actions then pending in said superior court.

In three certain actions wherein the Hogan Drilling Company, a corporation, was defendant, Goodwin was, on the twenty-eighth day of May, 1923, appointed receiver of property of the defendant and was directed to take possession of certain real property and of all personal property located

thereon. Goodwin qualified as such receiver on the twenty-ninth day of May.

Thereafter, on the fourth day of June, affidavits of Goodwin, of H. B. Pierce, and of L. D. Collings were filed charging the facts of the alleged contempt. Based upon those affidavits and the records and files of the said three actions, the court made its order citing respondents to show cause why they should not be adjudged guilty of contempt for the commission of the acts complained of, and to further show cause why they should not be enjoined and restrained from in any manner interfering with the receiver concerning the property in controversy.

The affidavit of Goodwin, after setting forth his appointment and that he qualified as receiver on the twenty-eighth day of May, states that on that day he, as such receiver, took possession of said property, including five boilers, together with other connections, equipment, and accessories adjacent thereto; that thereafter, on May 30th, he caused to be posted upon the premises certified copies of the order of his appointment, together with a notice that this property was then in the hands of the receiver; that on the first day of June Goodwin caused to be served upon the sheriff by leaving with one of his deputies certified copies of the order appointing receiver in said actions, and demanded that the sheriff and his deputies refrain from interfering with the possession of the receiver in and to said property or any part thereof; that on the first day of June, 1923, the receiver caused to be placed on said premises certain guards and caretakers for him as such receiver; that on the second day of June, disregarding the order of the court appointing Goodwin as such receiver, Juan Murrietta, the deputy sheriff to whom said notices had been delivered, signed an order directing the removal of one of the boilers (which for convenience and in accordance with the evidence we will call boiler No. 3) on the said premises; that on the third day of June said boiler No. 3 was removed from said premises by S. L. Pugh, W. N. Miller, H. D. Smith, and Robert Gill, together with the aid and assistance of certain workmen. The affidavits of Pierce and Collings give further details of fact, which need not be particularly stated at this time. Among other things, they show that on the real property described there are three uncompleted oil wells, together with derricks and other equipment, including a battery of five

boilers, among which is included said boiler No. 3. These allegations, in substance, were by the court found to be true, except that the receiver did not qualify until May 29th. It further appears that on the twenty-sixth day of May, 1923, the Pugh-Miller Drilling Company, a corporation, commenced in said superior court an action in replevin against the Hogan Drilling Company to recover possession of said boiler No. 3; that summons was issued, and the necessary affidavit, together with an indorsement in writing thereon, requiring the sheriff to take possession of said boiler, was executed and delivered to the sheriff, together with a good and sufficient undertaking then and there approved by the sheriff; that thereafter, on the fourth day of June, the sheriff in said action of replevin made his return certifying that on the twenty-eighth day of May, he executed said order by taking possession of said personal property, to wit, the said boiler, and by serving on the defendant Hogan Drilling Company, by leaving with G. F. Stamps, as vice-president thereof, a copy of the affidavit and order and undertaking. The sheriff further certified that the defendant having failed to except to the surety in the undertaking and having omitted to require a return of the property, and no other persons than the defendant having made claim thereto, the sheriff did, on the fourth day of June, .deliver the said property so taken to the plaintiff.

W. N. Miller, S. L. Pugh, and the Pugh-Miller Drilling Company were not parties to any of the actions in which the receiver was appointed. In its order, the superior court found, among other things, that Goodwin qualified as re- ceiver on the twenty-ninth day of May, and on that day, as receiver, took actual possession of said premises and the personal property thereon, and posted notices, etc.; "and as well called the same to the attention of Deputy Sheriff H. D. Smith and Deputy Sheriff Fleming, the sheriff's keepers stationed thereon in charge of said property under and by virtue of certain writs of attachment hereinafter referred to. That at the time said receiver went upon said prop- erty, together with his attorney Lewis D. Collings, said receiver and his attorneys inquired of the keepers for said sheriff under and by virtue of what authority they held said property, or any part thereof, and the said keepers at that time informed the said receiver and his said attorney that they were holding said property, or a part of said property,

under and by virtue of certain writs of attachment which had issued out of the superior court in an action against the Hogan Drilling Company, the defendant herein, which attachments had issued and were levied prior to the appointment of the receiver herein.

"That upon the 1st day of June, 1923, Willard L. Goodwin, Receiver, caused to be served upon William I. Traeger, Sheriff of Los Angeles County, by leaving with Juan Murrietta, Deputy Sheriff in charge of the Civil Department of the Sheriff's office, certified copies of the order appointing the receiver in the above-entitled actions, and demanded at said time and place that said Sheriff and his deputies refrain from interfering with the possession of said receiver in the property hereinbefore described, or any part thereof. That at said time and place said William I. Traeger, Sheriff, by his duly authorized deputy, Juan Murrietta, advised the receiver through his attorney, Lewis D. Collings, that the Sheriff of Los Angeles County was holding said property hereinbefore described under and by virtue of writs of attachment, and not otherwise. . . . that at the time the said receiver went on the property on the 29th day of May, 1923, and took actual possession and control of all the properties described herein, there was on said property five boilers enclosed in brick and masonry and attached to the realty, together with all necessary piping connections, pop valves, blow-off valves, water columns and smoke stacks. That thereafter on the 30th day of May, 1923, when the receiver went on said property he found certain persons thereon attempting to remove one of said boilers, together with the pop valves, blow-off valve, water column and smoke stack, which persons were agents and representatives of the respondents S. L. Pugh and W. N. Miller herein, and thereupon said receiver informed said persons of his authority, and thereupon said persons desisted from removing said boiler and appliances and left said premises; that thereafter, on the 1st day of June, 1923, the said receiver placed on said premises guards and caretakers, operatives of Charles A. Jones National Detective Agency to guard and protect said property for and on behalf of said receiver; that prior to this time, and on the 26th day of May, 1923, the respondents S. L. Pugh and W. N. Miller had commenced in the Superior Court of Los Angeles, California, an action for claim and delivery against

the Hogan Drilling Company for one boiler, and thereafter on said day they filed an affidavit and bond and demand with the Sheriff that said Sheriff remove said boiler.

"That thereafter and on the 2d day of June, 1923, disregarding the order of this court appointing said receiver dated May 28th, 1923, the said Juan Murrietta as Deputy Sheriff signed an order from the said Sheriff's office of Los Angeles County ordering one of the boilers on the premises released from said attachment and turned over to the respondents S. L. Pugh and W. N. Miller. That thereafter and on the 3d day of June, 1923, in violation of the orders of this court, Robert Gill, S. L. Pugh and W. N. Miller went on said premises assisted by laborers and workmen and unlawfully removed from said premises one of the boilers, together with two pop valves, one blow-off valve, one water column and one smoke stack; that in removing said property they tore down and dug out brick, concrete and other masonry surrounding said boiler and disconnected water and steam piping and other connections therewith, from which facts the court concludes:

"That at the time of the appointment of the receiver herein certain of the personal property was in the possession of the Sheriff by writ of attachment above referred to, and not otherwise. That upon *the 28th* day of May, 1923, the receiver, by virtue of his appointment, took possession of the property referred to in his appointment, and thereafter on the 29th day of May, 1922, he took actual and physical possession of said property, and at said time notified said Sheriff of his appointment and posted said property so that anyone interested therein might know that said property was in the possession of the court by virtue of this receivership.

"That thereafter, on the 1st day of June, 1923, the Sheriff received actual notice of said appointment and the possession claimed by said receiver. Thereafter and before said boiler was taken from said premises respondents S. L. Pugh and W. N. Miller likewise received actual notice of said appointment and possession claimed by said receiver.

"That thereafter, on the 3d day of June, 1923, Juan Murrietta, Robert Gill, S. L. Pugh and W. N. Miller unlawfully and in violation of the order of this court, removed from said property the boiler and equipment above referred to, which act was done with the knowledge of William I.

Traeger, Sheriff of Los Angeles County, by reason of the fact that said act was done by his authorized deputies, . . ."

On behalf of petitioners, it is contended that the undisputed evidence at the hearing in the court below proves that the sheriff had actual possession of boiler No. 3, and was holding the same for the Pugh-Miller Company, plaintiff in the replevin case, before the receiver had taken his oath of office, and therefore prior to the time when there could have been any taking of possession by the receiver; that the condition of the replevin action at that time and of the matters related thereto was such that the plaintiff in replevin was entitled to have possession of boiler No. 3 on the third day of June, unless prior to that time the defendant in replevin executed the bond necessary to obtain a return of such property. Petitioners therefore claim that as against the receiver, the plaintiff in replevin stood in the position of an adverse third party in possession of the property in question, and that as such adverse third party the Pugh-Miller Drilling Company, plaintiff in replevin, cannot be required to surrender its rights on the mere demand of the receiver or the mere order of the court which appointed the receiver; but that in such case the receiver must enforce his demand by a separate action, if it is to be enforced at all. Counsel for respondents, on the other hand, contend that the said affidavits in the contempt proceeding alleged facts sufficient to give jurisdiction therein, and that the facts thus alleged are confirmed by the findings contained in the order of the court made after a hearing in that proceeding. From these premises they argue that the jurisdiction of the superior court is conclusively established; and that since the writ of review is confined to matters of jurisdiction, we are now precluded from examining or considering that part of the record of the lower court which consists of the evidence received on the hearing of the order to show cause. Nevertheless, a transcript of that evidence has been produced, and it was stipulated that if we deem it necessary and appropriate to consider such evidence as a part of the return to the writ, this transcript contains the said required evidence.

[1] Assuming that both the affidavits and the order are sufficient in their contents to sustain the jurisdiction of the court in that proceeding, nevertheless, on writ of *certiorari* the reviewing court may examine the evidence upon which

the order was based in so far as such evidence applies to or affects the question of jurisdiction. For it might be that the jurisdictional facts as recited in the order of the court did not exist, and it might be that the evidence positively and without conflict therein proved that such facts did not exist. Under such circumstances, it must be that the entire record, including the evidence, may be considered. (*Strain* v. *Superior Court*, 168 Cal. 216, 223 [Ann. Cas. 1915D, 702, 142 Pac. 62].)

The facts as they actually occurred, so far as they are necessary to the determination of the question of jurisdiction, are shown by the evidence, which as to those facts is without conflict. In connection with the testimony of Deputy Sheriff Murrietta, the sheriff's returns on the writs of attachment were read in evidence. In *Cooper* v. *Hogan Drilling Co.*, the return shows that on April 23d, he attached "the following described personal property in the possession of the defendant: Derricks, boilers, rotary equipment, drilling outfits, machinery and all other personal property belonging to the defendant, located on Lambert Wells No. 1, 2 and 4, located at Signal Hill . . . , and attached the same by taking into my possession and putting a keeper in charge." There were other attachments, but we need not refer to them, since it appears that if the sheriff was holding under attachment the boiler which was delivered on the claim and delivery demand, he at least held it under the Cooper attachment. This being so, it becomes necessary to consider the effect of the acts of the sheriff when, on the twenty-eighth day of May, he honored the demand of the plaintiff in replevin by placing a man in charge of said boiler No. 3 as a keeper for the purposes of that action. If it be the law that the sheriff cannot hold in possession under attachment, property of the defendant in one action, and at the same time take possession of that property on behalf of a third party demanding the same as plaintiff in an action of replevin, yet we think it would not follow that the plaintiff in replevin acquired no rights under the process as actually executed in his behalf in that case. [2] Where a sheriff, acting in good faith, has satisfied himself that he is wrongfully holding under attachment personal property that is not the property of the defendant in attachment, it appears to be within his power (subject to his liability to the attaching plaintiff if the release proves to

have been wrongful) to release such property from the attachment. Concurrently with such release, the sheriff would likewise have authority to seize the same property under the order in claim and delivery.

But the prior right of the plaintiff in replevin, as against a subsequently acquired right of possession, does not depend upon the release of the attachments. The sheriff must "serve all process and notices in the manner provided by law." (Pol. Code, sec. 4157, subd. 9.) When he has done so, as in the present case, he has a double possession cast upon him by law, which gives him a position analogous to that of a stakeholder between adverse claimants.

Service of process and orders by the coroner is not provided for by the statute, except when the sheriff is a party to the action or proceeding, and by an elisor (so far as the question arises here), only when both sheriff and coroner are parties. (Pol. Code, secs. 4172, 4173; *Buckeye Refining Co.* v. *Kelly,* 168 Cal. 14 [Ann. Cas. 1913E, 840, 124 Pac. 536].)

[3] In the present instance, then, it is clear that the sheriff, in the claim and delivery proceeding in the replevin action, had taken possession of boiler No. 3 before there was any receiver. The receiver, being subsequent in time as to his right or claim, is not in position to attack the validity of that possession; nor can the court do so by contempt proceedings in the receivership cases.

If at the time when the receiver qualified and attempted to take possession of the property in question this boiler had passed to the actual possession of the Pugh-Miller Drilling Company, the plaintiff in replevin, clearly it would have been beyond the power of the court by its mere order to compel such party in possession to surrender the property to the receiver. Its only power would have been power to authorize its receiver to sue for possession of that property. (*Stuparich Mfg. Co.* v. *Superior Court,* 123 Cal. 290 [55 Pac. 985]; *Tapscott* v. *Lyon,* 103 Cal. 297, 305 [37 Pac. 225]; *Havemeyer* v. *Superior Court,* 84 Cal. 327, 387 [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121]; *Havemeyer* v. *Superior Court,* 87 Cal. 267, 270 [10 L. R. A. 650, 25 Pac. 433].)

[4] For the purposes of the present case, we are of the opinion that upon the actual facts, the possession of the sheriff in the claim and delivery proceeding on and after

May 28th was the same in effect as if the plaintiff in replevin had been in actual possession. By virtue of the pendency of the claim and delivery proceeding, and by virtue of the statute authorizing the same, the plaintiff in replevin was in possession through the sheriff as its agent, subject only to the right of the defendant Hogan Drilling Company (within the time prescribed by section 514 of the Code of Civil Procedure) to obtain redelivery of the property by requiring the same upon giving to the sheriff the necessary redelivery undertaking. And it may be assumed that the receiver, upon his appointment and qualification, became subrogated to the same right of the defendant Hogan Drilling Company to obtain such redelivery by giving said undertaking.

[5] Respondents claim that when Goodwin qualified as receiver, and attempted to take possession of the property in question, his right to possession related back to the time of the order appointing the receiver; that therefore the court, in the proceeding here under review, had authority to enforce that right of possession by direct order, even as against a claimant not a party to the receivership cases, if such claimant obtained possession after the time of appointment of the receiver, though prior to the time when the receiver qualified as such and took, or attempted to take, possession of the property. This contention cannot be sustained. In *Bank of Woodland* v. *Heron*, 120 Cal. 614, 619 [52 Pac. 1006], this question was discussed and determined. It was there contended that the mere order of the court appointing the receiver constituted *ipso facto*, a possession of the property independent of any actual possession by the receiver, or of any attempt by him to take possession. But the court held that in a case where the receiver was not appointed to conserve liens upon, or other pre-existing rights in the property for which the receivership was instituted, the rule contended for did not exist. On the contrary, it was held that the proceeding was analogous to a writ of attachment, and would be effective only after possession taken by the receiver, as the writ of attachment would be only after levy. Moreover, in the case here, it was not shown by any evidence that the order of May 28th, appointing the receiver, was prior in time to the execution, by the sheriff, of the claim and delivery order on the same day.

We are of the opinion that in making the order in question, the superior court exceeded its jurisdiction.

The order is annulled.

Shenk, J., *pro tem.*, and Curtis, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 5, 1923.