GEORGE L. TIPPINS v. BELLE MEAD DEV. CORP., *et. al.*

150 So. 719.
Division A.
Opinion Filed October 17, 1933.
Rehearing Denied November 24, 1933.

*Millard B. Conklin,* for Appellant;

*B. F. Brass,* for Appellees.

DAVIS, C. J.—On the 25th day of August, 1932, a bill of complaint for the foreclosure of two mortgages—one a real estate mortgage and the other a chattel mortgage—was filed in the Circuit Court of Volusia County. The complainant sued as the assignee of the notes and mortgages in suit. The defendants were Florida East Coast Bulb Farms, Inc., the original mortgagor, and one George L. Tippins, an individual. In the bill, Tippins was charged with having some subordinate interest in the property sought to be foreclosed. Later, certain additional defendants were brought in by an amendment. But as this appeal is by George L. Tippins alone, from certain interlocutory orders and the final decree was rendered against him, a consideration of the rights of any of the other defendants is made unnecessary.

On September 27, 1932, the court appointed a receiver for the mortgaged property. Inventoried as the property he took into his possession, was the following: One million paper white narcissus bulbs, fifty thousand soliel d'or narcissus, fifty thousand amaryllis replanting seedlings, three

thousand calla lilies, all plants in the field lying to the north of the residence on the bulb property, one Fordson tractor, four Bradley plows, 1 spring tooth harrow, 1 shovel, 1 hoe, 3 potato diggers, 1 spading fork. It was assumed by the receiver, and upon that assumption was his action taken, that the personal property aforesaid was the same personal property that had been on the premises of the mortgagor at the time when the mortgage was executed, or, insofar as the bulbs are concerned, that the bulbs seized were either the original bulbs, or were the outgrowth of the original bulbs, or the product thereof.

The real property sought to be foreclosed in the suit was simply described in the mortgage as certain real estate (giving legal description), together with all tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, *and* "the rents, issues and profits thereof." The chattel mortgage was described as having been given upon "all the goods, chattels and personal property mentioned in the schedule hereunto annexed and now in its (mortgagor's) possession." The annexed schedule referred to was as follows: 1,000,000 paper white narcissus; 100,000 soliel d'or narcissus; 20,000 gladiola; 12,000 Roman hyacinths; 400 hybrid amaryllis; 50,000 hybrid amaryllis seedlings; 3,000 Godfrey callas; 1 Fordson tractor No. 505036; 4 David Bradley plows; 1 three-section spring-tooth harrow; shovels, rakes, and small tools.

As to the personal property described in the schedule annexed to the chattel mortgage as being in the mortgagor's possession at the time of the execution, that mortgage was good *as between the mortgagor and mortgagee*. This is so, notwithstanding the provisions of Chapter 10279, Acts of 1925 (Sections 5741-5742, C. G. L.).

We have held in a companion appeal in this same case

taken by a different defendant (Weber v. Belle Mead Development Corporation) that the effect of the 1925 statute was not to invalidate any chattel mortgage on agricultural, horticultural or fruit crops that would have been valid and enforceable *between the parties* without the statute.

In the opinion just mentioned, it was held that the 1925 statute merely established, as to crop mortgages, three distinct rules: (1) It recognized an existing right, and extended that right, by providing for the giving of valid chattel mortgages on agricultural, horticultural and fruit crops, in those cases where, but for the statute, a chattel mortgage would be invalid,—for example, an instrument given as a mortgage on products to be grown, the mortgage being made before preparation of the yearly crop began; (2) it fixed and defined the exclusive method by which any and all crop mortgages given on agricultural, horticultural and fruit crops can be made a valid lien as against subsequent encumbrances and subsequent purchasers without notice, that is to say, it requires such mortgages to contain a description of the land upon which the crops are grown, or are to be grown, and requires such mortgages to be recorded, in order to bind third parties; (3) it limits the authority to give a valid mortgage on future crops prior to the time preparation of same is begun, to those mortgages only wherein the land on which such crops are to be produced, is definitely described in the mortgage.

The statute, as we have just pointed out, was not intended to render invalid, as between the parties to it, an ordinary mortgage lien on agricultural, horticultural or fruit crops, in those cases where, under the laws of this State as they had been construed by judicial decisions prior to the statute, such mortgage lien could have been created and held good *inter partes*.

Therefore the chattel mortgage sued on in this suit, being a mortgage on an annual crop of growing bulbs, which it is alleged, was in existence at the time it was given, was not unenforceable between the parties to it, regardless of whether it is enforceable against third parties or not. See: Shomaker v. Waters & Davis, 56 Fla. 559, 47 Sou. Rep. 936. Compare: Farmers' Union Warehouse Co. v. Wells, 65 Fla. 350, 61 Sou. Rep. 745; Davis v. Horne, 54 Fla. 563, 45 Sou. Rep. 476, 127 Am. St. Rep. 151.

The bill of complaint, also, was filed to foreclose a mortgage on real estate. Upon such mortgaged real estate it was alleged there was being grown and produced a large number of mortgaged bulbs, that these bulbs required constant care and cultivation in order to be available to complainant for subjection to its mortgaged security. As against the mortgagor, at least, the Circuit Court, taking into consideration the allegations of the bill made in support of the prayer for receiver, was warranted in the appointment of a receiver to take charge of, manage and operate the *res* in suit. Especially is this true when at the time a receiver was appointed, the defendant Tippins was in default insofar as the record showed. Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 Sou. Rep. 241.

The receiver was appointed September 27, 1932. He appears to have qualified and taken possession forthwith. At the time of his appointment, George L. Tippins was a party to the foreclosure suit. So the appointment of a receiver was binding on him, as a defendant, with reference to all the property that the receiver had taken possession of and had undertaken to inventory as part of the receivership estate. It does not appear that the receiver has acted otherwise than in an honest endeavor to assume charge of the mortgaged property, and no more than that, under

the order of the court, and as between the mortgagor and mortgagee, there is authority for the holding that plants, such as the bulbs in this case were shown to be; would pass to the mortgagee by accession under the circumstances. 1 Jones on Mortgages (8th Ed.), page 241.

On October 21, 1932, defendant, Tippins, filed an independent suit at law against the mortgagor. The purpose of the action was to have adjudicated as against the defendant mortgagor an alleged labor lien on some of the property that was then in the possession of the receiver. Judgment in that suit was entered November 7, 1932. The receiver was never made a party to that action, nor was permission sought from the Chancery Court to sue the receiver. Execution was issued November 23, 1932. Thereafter the property was advertised for sale. The separate action at law was evidently predicated on the theory that the order appointing a receiver of the property embraced in the foreclosure suit was void on the ground that in the foreclosure suit no sufficient lien on the property was shown to support a decree of foreclosure of the complainant's mortgage against it.

The doctrine is well settled that the personal property in the hands of an equity receiver is regarded as being *in custodia legis*. As such it cannot be reached by execution or other similar process so long as so held, in the absence of statutory authority. The doctrine of *in custodia legis* is a rule of property right, made for the benefit of litigants, as well as a rule of jurisdiction made for the purpose of avoiding conflicts between courts. It applies until the matters involved in the receivership suit have been finally disposed of, whether the execution issued out of the same or out of another court. 23 C. J. 357-358.

So long therefore as the order appointing a receiver stood

unvacated in the equity cause in suit, Mr. Tippin, as a defendant, and he, as a party, was bound by such order. He was so bound whether the receivership order had been erroneously made or not. And any attempt on his part, through a separate suit at law to have seized and sold the property that was, at the time, in the hands of the equity receiver, was not justified by the rule that where property is taken by virtue of legal process it can be considered as being in the custody of the law only in cases where there is authority of law to hold it.

In this case, since the court had jurisdiction of the parties and subject matter, the order appointing the receiver constituted legal process. Whether erroneously entered or not that fact did not make it void. Tippins being a defendant in the cause in which the receivership order was made, and not a third party, was not entitled to contest with the receiver the scope and extent of the receiver's authority over the property he had taken into his possession under orders of the equity court by any method of collateral attack, such as the bringing of an independent suit and levying under it on the property in the receiver's hands.

In such situation, it was the province of Tippins to seek an adjudication of his rights by having a judgment in his lien proceeding entered as against the mortgagor, so that he might plead that judgment in the foreclosure suit as constituting a lien superior to the mortgage, if such it was contended to be. Tippins was also entitled, on appropriate pleading, to have a ruling from the chancery court entered, adjudicating the question of priorities and instructing the receiver with regard to that subject.

The order entered herein and appealed from in this case, consolidating the common law suit with the equity suit and vacating the judgment rendered in the common law case,

was unauthorized as an exercise of the equity jurisdiction acquired by the court in this case. This is so, since no such relief was prayed in the bill, nor authorized by any allegation in the bill contesting as against Tippins, the external validity of his lien judgment against the mortgagor, or the propriety of his execution thereon.

The remedy of complainant was to seek an order temporarily or permanently enjoining the levy of the execution on the Tippins judgment as against property in the hands of the receiver, thereby preventing the use of the Tippins' execution as a means of collaterally subjecting the property in the receiver's hands to the satisfaction of the judgment creditor's claim.

But it was not an appropriate proceeding for a court of equity, through its own equity order, to collaterally void and set aside a judgment at law, whose external validity as a valid adjudication between the judgment creditor and the judgment defendant is not brought in issue in the equity suit. Nor is it proper for a court of equity, by an order for the consolidation of a common law suit with an equity suit, to proceed to accomplish the same result by first making an order of consolidation and then vacating the judgment in the common law suit, after consolidation is accomplished.

We find no error in the order appointing a receiver. Nor do we find any error in the order refusing to vacate such appointment. The order of consolidation of the common law suit with the equity suit was unauthorized and must be reversed. So must be reversed the order entered directing the cancellation and setting aside of the defendant Tippins' common law judgment adjudicating his labor lien.

The execution of the law judgment may be enjoined, however, to protect the receiver, until the priorities between the lien of the Tippins' judgment and of complainant's mort-

gage lien are determined as between complainant and defendant Tippins.

The final decree should be vacated as to defendant Tippins, with directions to determine the equities as between the alleged lien of complainant's mortgage and the Tippins adjudicated labor lien and for entry of an amended final decree as to Tippins on that subject. The costs of the appeal should be taxed one-half against each of the parties appellant and appellee herein, and the cause remanded for further appropriate proceedings, and it is so ordered.

The writer of this opinion thinks it appropriate to commend the excellent manner in which the transcript of the record has been prepared, typewritten and indexed. Also the easily readable form in which the briefs of both parties have been set up. In cases like this, where the briefs are long and the records voluminous, it is of especial assistance to the Court to have the record and the briefs as thoroughly indexed as has been done in this case and its companion case.

Affirmed in part and reversed in part and remanded for further proceedings in conformity with this opinion.

WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.