In re TECHNICAL LAND, INC., Debtor.

N. William JARVIS, et al., Plaintiffs,

v.

TECHNICAL LAND, INC.,
et al., Defendants.

Bankruptcy No. 93–1166.
Adv. No. 94–0020.

United States Bankruptcy Court,
District of Columbia.

June 1, 1994.

Paul Webber, IV, Washington, DC, for plaintiff Jarvis.

Patrick J. Kearney, Washington, DC, for plaintiff Kaiser.

James J. Levin, Rockville, MD, for defendants Technical Land, Inc., William E. Moore and Judith Deitz.

### MEMORANDUM DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The issue before the court is the ownership of certain real property. Technical Land, Inc. ("Technical") asserts title to the property by virtue of a marshal's deed issued on January 7, 1993, pursuant to an execution sale on a judgment lien. The plaintiffs assert that this deed was ineffective to convey any interest to the debtor because prior to the foreclosure sale, the property was taken into *custodia legis* by the appointment, by the Superior Court of the District of Columbia, of a receiver for the property. The central facts are undisputed and the primary issue is purely one of law: is a marshal's sale of property in the custody of a receiver, conducted without leave of the receivership court, effective to convey title to property? I conclude it is not.

### I. THE FACTS

The plaintiffs are Ralph D. Kaiser, Inc. ("RDK") and N. William Jarvis ("the Receiver").[1] RDK claims to hold certain mortgages on the disputed property. On August 4, 1986, Techniarts Video, Inc., William Moore and Judith Deitz filed a complaint against the then-owner of the property, 1631 Kalorama Associates ("1631 Kalorama"[2]), for breach of contract and related claims. On December 11, 1991, judgment was entered against 1631 Kalorama and in favor of Moore and Deitz in the amount of $131,055.13.

On March 11, 1991, RDK petitioned for appointment of a receiver for the property. A receiver was appointed the next day to

---

1. It is unclear whether the Receiver has joined in the motion for partial summary judgment, filed by RDK, which is now before the court. Defendants argue that RDK lacks standing to assert the Receiver's rights in this adversary proceeding. However, the Receiver is RDK's co-plaintiff, and has raised no objection to RDK's motion. As RDK is a party in interest in this proceeding, and has a real economic interest in the issues it has raised, Defendants' objections to RDK's standing are overruled.

2. The distinction between 1631 Kalorama Associates and its successor, 1631 Kalorama Associates Limited Partnership, is irrelevant to the issues here and both will be referred to as "1631 Kalorama."

collect the rents and income from the property. No bond was required under the terms of this order. By order dated November 4, 1991, the receiver's authority was expanded to that of a general receivership for the property and Jarvis was appointed to replace the prior receiver. At all relevant times since then, Jarvis was in possession of the property, collecting the rents, paying the bills and maintaining the property.

The November 4 order provided that "within 10 business days of the entry of this Order, the Receiver shall secure his performance with a bond in the amount of $2,500.00." On December 10, 1991, Jarvis obtained a bond in the amount of $2,500.00. On or about December 10, 1991, Jarvis's attorney attempted to post the bond with the court, but for unknown reasons the clerk did not accept the bond. However, by order dated October 18, 1993, the Superior Court accepted Jarvis's bond *nunc pro tunc* to November 4, 1991.[3]

During 1992, Moore and Deitz obtained a writ of *fieri facias* directing the sale of the property. An execution sale was held at which Moore and Deitz were the high bidders, at $1.00. Moore and Deitz had the debtor, a corporation which they own, substituted as the purchaser and the Marshal's deed was issued to the debtor on January 7, 1993.

Since then, both 1631 Kalorama and the debtor became subject to bankruptcy proceedings. The title to the property is the only substantial asset that either of these entities claims. The court is abstaining in 1631 Kalorama's bankruptcy case, leaving the matters raised therein to the receivership proceedings. In its bankruptcy case, Technical has urged that the receivership was fraudulently procured because RDK failed to disclose that it had liens on other properties that may substantially secure it; has challenged the validity and amount of RDK's liens; and has proposed a plan to reorganize the property. RDK has filed a competing plan. The competing efforts to reorganize

the property have been contentious and involve substantial attorneys' fees.

## II. LEGAL ANALYSIS

### A. *Property Held In Custodia Legis Is Not Subject To Execution Without Leave Of The Court*

■ Despite the vigorous advocacy of the defendants, the law on the central question was settled long ago in favor of the receiver. In *Hitz v. Jenks*, 185 U.S. 155, 22 S.Ct. 598, 46 L.Ed. 851 (1902) (gathering cases), a receiver appointed by the Supreme Court of the District of Columbia, who was also a trustee under a deed of trust for the property, sold the property pursuant to the deed of trust. The United States Supreme Court held that this sale was invalid and conferred no title because the property was in *custodia legis* and the receivership court had not granted permission for the sale. Quoting *Wiswall v. Sampson*, 55 U.S. (14 How.) 52, 14 L.Ed. 322, 14 L.Ed. 322 (1852), the Court wrote:

> The settled rule also appears to be that where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation, by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill; and any purchaser pendente lite, even if for valuable consideration, comes in at his peril.

185 U.S. at 166–67, 22 S.Ct. at 603 (citation omitted).

*Wiswall v. Sampson* was also relied on by the D.C. Supreme Court in *Barton v. Barbour*, 10 D.C. 212 (1877), *aff'd*, 104 U.S. 126, 26 L.Ed. 672 (1881), in which the court held that a tort plaintiff could not maintain a suit against the receiver for a railroad company without first seeking leave of the receivership court. *Cf. Herman v. Siney*, 190 A.2d 650 (D.C.App.1963) (property levied upon is in custody of court, and a receiver subsequently appointed by a different court may not take possession away from that court).

**3.** The debtor argues that the Receiver has not validly taken possession of the property because of its failure properly to post the bond, and that the marshal's sale therefore was effective. The

facts, recited above, show that the receivership court has accepted Jarvis's bond *nunc pro tunc* to the date of his appointment. Accordingly, there is no merit to the debtor's argument.

The defendants claim that possession by the receiver does not invalidate an execution sale because the sale does not disturb the receiver's possession of the property. Yet this argument was also advanced in *Wiswall* and was firmly rejected:

It has been argued, that a sale of the premises on execution and purchase, occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale therefore, in such a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove any impediments in the way of his execution.... And, in order to effectuate this, the court must administer it independently of any rights acquired by third persons, pending the litigation.

55 U.S. at 66. The argument was also raised and rejected in *Hitz,* 185 U.S. at 166, 22 S.Ct. at 602, and in *Barton,* 10 D.C. at 219.

The defendants rely on *Johnson v. Smith,* 297 N.Y. 165, 77 N.E.2d 386 (N.Y.1948), *Chautauque County Bank v. Risley,* 19 N.Y. 369, 75 Am.Dec. 347 (1859), and *Mercantile Trust Co. v. Sunset Road Oil Co.,* 50 Cal. App. 485, 195 P. 466 (Cal.Ct.App.1921). These cases hold that a purchaser may acquire title by purchase at an execution sale notwithstanding the failure to obtain leave of the receivership court (although the levying creditor may be held in contempt for failing to obtain leave of the court). However, the New York cases do not distinguish *Wiswall,* they simply reject it as not being the law of New York State. *Johnson,* 297 N.Y. at 173, 77 N.E.2d at 390; *Chautauque,* 19 N.Y. at 877. *Wiswall* does appear to be the law in the District of Columbia.

Similarly, in the California case, the court notes that "whatever confusion or doubt may exist upon this question in other jurisdictions," California applies a different rule to receiverships that protect only the interests of parties to the immediate proceeding (such as a mortgage foreclosure or divorce receiv-

ership) and receiverships in cases such as insolvency, where the interests of all creditors are to be protected. *Mercantile Trust,* 195 P. at 471. If any such distinction exists in the District of Columbia, the District of Columbia courts have not found the distinction to warrant differing results. Moreover, this distinction is not so clear under District of Columbia law, given the standard for appointment of a receiver set forth in *Totten v. Harlowe,* 90 F.2d 377 (D.C.Cir.1937) and applied in this case. That standard, as described in the Superior Court order of November 4, 1991, is "1) the value of the mortgaged property is not sufficient to insure payment of the mortgage debt, 2) the party liable for payment of the debt is insolvent, and 3) there are conditions which make an immediate foreclosure impractical." The fact that insolvency of the debtor is a factor indicates that the receivership is not limited to protecting the interests of the mortgagor and mortgagee, but that the receiver holds the property as an officer of the court for the benefit of any and all parties who may have interests in the property. *See Hitz,* 185 U.S. at 165, 22 S.Ct. at 602 ("[a]s receiver he held the property for the court and for the benefit of all the parties asserting an interest in it"). Any such parties are entitled to bring their interests to the receivership court for determination and protection.

The present case is governed by the law of the District of Columbia which, according to *Hitz* and *Barton,* embraces *Wiswall v. Sampson.* Moreover, *Wiswall* is followed by many other jurisdictions. *See e.g., Wilzig v. Sisselman,* 209 N.J.Super. 25, 506 A.2d 1238, *cert. denied,* 104 N.J. 417, 517 A.2d 415 (1986); *Hemisphere Pictures, Inc. v. Lust,* 36 Md.App. 67, 373 A.2d 48 (Md.1977); *First Southern Properties, Inc. v. Vallone,* 533 S.W.2d 339 (Tex.1976); *Tippins v. Belle Mead Development Corp.,* 112 Fla. 372, 150 So. 719 (Fla.1933); *Davis v. Mazzuchelli,* 238 Mass. 550, 131 N.E. 186 (Mass.1921). In light of the Supreme Court precedent, the D.C. cases, and the more recent cases from other jurisdictions, *Johnson, Chautauque* and *Mercantile Trust* are not persuasive.

■ Not only was the marshal's sale invalid, but Moore and Deitz never obtained a

judgment lien on the property because their judgment was entered after the appointment of the Receiver. Just as *Wiswall* and its progeny prevent creditors from conducting an execution sale on property in *custodia legis,* they prevent creditors from attaching judgment liens to such property without leave of the receivership court. *See e.g., Modart, Inc. v. Penrose Ind. Corp.,* 404 F.2d 72 (3d Cir.1968); *Temple v. Glasgow,* 80 F. 441 (4th Cir.1897); *Quinn v. Bancroft–Jones Corp.,* 12 F.2d 958 (W.D.N.Y.1926); *Davis v. Mazzuchelli,* 238 Mass. 550, 131 N.E. 186, 188 (Mass.1921).

The facts of this case support the wisdom of the rule in *Wiswall.* Prohibiting attachment, execution and levy on receivership property without leave of the receivership court helps prevent complex and wasteful litigation such as the present lawsuit. It aims to ensure that all claims against the property are resolved in an orderly fashion in one forum. This bankruptcy case would never have been filed had Moore and Deitz brought their judgment to the receivership court for satisfaction out of the property after payment of prior encumbrances.

## B. The Absence Of Notice Would Not Change This Result

The defendants would distinguish this case from the rule established in *Wiswall* on the grounds that they had no knowledge or notice of the receivership, and that the receivership therefore could not affect their rights.[4] The court concludes that the absence of notice does not affect the outcome.

### 1. The Receiver Was Not Required To File A Notice Of Lis Pendens

■ The defendants cite *Bank of Woodland v. Heron,* 120 Cal. 614, 52 P. 1006 (1898), and *Miller v. Superior Court,* 63 Cal. App. 1, 217 P. 817 (Cal.Ct.App.1923), for the proposition that a receiver must file a lis pendens, giving constructive notice, to perfect its interest in property as against the interests of third parties without actual knowledge.[5] RDK cites other cases holding that lis pendens is not applicable to property in the possession of a receiver. *Wilzig v. Sisselman,* 209 N.J.Super. 25, 506 A.2d 1238, *cert. denied,* 104 N.J. 417, 517 A.2d 415, 107 N.J. 109, 526 A.2d 181; (1986); *First Southern Properties, Inc. v. Vallone,* 533 S.W.2d 339 (Tex.1976). Although the wiser practice might be for receivers to avoid disputes by filing a notice in the land records, the filing of a lis pendens is not required to "perfect" a receiver's interest as against that of a bona fide purchaser for value.

Unlike most jurisdictions, the District of Columbia has no lis pendens statute. The common law doctrine of lis pendens, applicable in the District of Columbia, is that subsequent purchasers of property are on constructive notice of matters contained in pending litigation concerning that property. *See First Maryland Financial Serv. v. District Realty Title Ins. Corp.,* 548 A.2d 787, 791 (D.C.App.1988). Lis pendens puts the world on constructive notice of litigation involving the property, and so protects the litigant from the claim that under an applicable recording statute, a subsequent bona fide purchaser for value takes title clear of the disputed interest. *See First Maryland,* 548 A.2d at 791 (lis pendens provides constructive notice that prevents a purchaser from being a holder in due course under D.C.Code § 28:3–302). However, there is no recording

---

4. The parties disagree on whether any of the defendants had actual knowledge of the receivership action prior to the execution sale. For purposes of this summary judgment motion, the court accepts the debtor's factual assertion and assumes that none of the defendants had any knowledge of the receivership.

5. *Bank of Woodland* and *Miller* do not in fact stand for this proposition. In *Bank of Woodland,* the court held that party had a claim to crops superior to the claim of the receiver, when he purchased the crops prior to the receiver taking possession of the land on which they were growing. In arriving at that conclusion, the court reasoned that the receiver's interest is senior to that of any party (such as Technical) that acquires its interest after the receiver takes possession of the property. 52 P. at 1009. Moreover, in *Woodland,* the mortgagee did not have a lien on the crops, just on the land. The court specifically wrote that a different rule would likely apply in a case (such as the present one) where the party seeking appointment of the receiver had a prior recorded lien on the property in dispute. *Id.* at 1008. *Miller* merely applied *Woodland* on similar facts, and adds nothing to the defendants' case.

statute in the District of Columbia that would advance the interest of a subsequent purchaser over the rights of a receiver, and so the doctrine of lis pendens is not relevant in this case.

### 2. Section 45–1103 Does Not Apply In This Case

■ The defendants argue that the receivership action did nothing more than create a resulting trust, which was subsequently defeated by the transfer of the property to a bona fide purchaser. They rely on D.C.Code § 45–1103, which provides that "[n]o implied or resulting trust shall ... defeat the title of a purchaser for a valuable consideration and without notice of such trust." Technical argues that the receivership is a resulting trust within the meaning of the statute, but it cites no cases for the proposition that a receivership is a resulting trust, nor has the court found any.

■ A resulting trust is "is a property relationship designed to effectuate the parties' intent when one party takes title to property for which another has furnished the consideration." *Save Immaculata/Dunblane, Inc. v. Immaculata Preparatory School, Inc.*, 514 A.2d 1152, 1157 (D.C.App. 1986), *quoting Edwards v. Woods*, 385 A.2d 780, 783 (D.C.App.1978)). A receivership is an equitable proceeding designed to preserve and protect property for the benefit of all of the parties who may hold interests in it. It places the possession in the receivership court, granting that court exclusive jurisdiction to deal with the property. *First Southern Properties*, 533 S.W.2d at 343, *citing Palmer v. Texas*, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909). This is not the same as a resulting trust, in which the party with legal title to a property is deemed to hold that title in trust for the party who furnished the consideration for its purchase.

Section 45–1103 is not applicable because this case does not involve a resulting trust. However, it is true that the purposes served by § 45–1103 have a role in receivership. As the court noted in *First Southern*, "[t]he

apparent harshness of the *custodia legis* rule is tempered somewhat by the fact that a purchaser without actual notice under an execution or a deed of trust sale is entitled to recover his money ..." 533 S.W.2d at 343. This rule follows from the purpose and nature of a receivership proceeding, in which the court must balance the interests of all parties having claims to the property. This equitable balancing will necessarily involve many of the same considerations as give rise to statutes, such as § 45–1103, protecting bona fide purchasers for value. In appropriate circumstances, for example, it is conceivable a receivership court might determine that a bona fide purchaser that paid substantial value for the property without notice of the receivership, should take legal title to the property. However, unless and until such an extraordinary determination is made by the receivership court, any purported sale of property in *custodia legis* is void—not merely voidable.

That equitable principles embodied in the statute may sometimes apply does not mean that the statute itself is applicable. As the property is held by a court of equity, the remedy for a bona fide purchaser lies not in the bright line rules of the recording statute, but in the sound discretion of the receivership court.

In the present case, Technical took title as the assignee of Moore and Deitz's $1.00 bid to purchase the property. This purely nominal bid gives rise to no obvious equitable interests or considerations that call for protection. Technical is in no way prejudiced by the declaration that the execution sale was invalid. To the extent that it has suffered, its loss is in attorney's fees and costs incurred after learning of the receivership.[6] That loss was created by its own actions, and has been suffered equally by all the other parties herein. It gives rise to no equitable considerations in favor of Technical. Nonetheless, if Technical believes that it has suffered unfairly from the effects of the receivership, its remedy lies in a petition to the

---

6. Moore and Deitz presumably incurred fees and costs prior to the execution sale but they did so with the risk that a receivership might ensue (or come to light) prior to the sale being held. They thus are no worse off in this regard than had they been given notice of the receivership immediately prior to the execution sale.

receivership court, not in an assertion of title to the property.

As the property was subject to receivership, and not to a resulting trust as argued by Technical, Section 45–1103 is not applicable. Nonetheless, for the sake of completeness, the next section analyzes Technical's claim under Section 45–1103 as if it were applicable.

### 3. *Even If Section 45–1103 Did Apply, Technical Is Not A Bona Fide Purchaser For Value*

 Section 45–1103, by its terms, only protects the interest of a purchaser for valuable consideration.[7] The requirement of valuable consideration is not the same as legally sufficient consideration to support a contract, which can be nominal. The purpose of requiring valuable consideration is to ensure that unrecorded deeds and mortgages are only invalidated if equity compels that result—that is, if another party has acted in detrimental reliance on the failure to record. *Anderson v. Anderson,* 435 N.W.2d 687, 689 (N.D.1989), *quoting Horton v. Kyburz,* 53 Cal.2d 59, 346 P.2d 399, 403 (Cal.1959) (the purpose of recording laws "is to protect those who honestly believe they are acquiring a good title, and *who invest some substantial sum in reliance* on that belief" (emphasis added)). Where a party purchases property

for purely nominal consideration, detrimental reliance does not exist and the purchaser is not protected by the recording statute or by equitable considerations. *See United States v. Certain Parcels of Land Situate in San Bernardino County,* 85 F.Supp. 986, 1006 n. 17 (S.D.Cal.1949), and cases cited therein.

Technical is a corporation wholly owned by Moore and Deitz. It obtained the property as the assignee of the marshal's deed resulting from an execution sale at which Moore and Deitz bid $1.00.[8] While this sale is not inherently invalid, neither does a price of $1.00 constitute valuable consideration. *United States v. Certain Parcels of Land, supra.*

Whatever the value of the property after taking into account the negative impact of the asserted and possibly valid liens against the property, the $1.00 purchase price is merely nominal, not valuable consideration. The status of bona fide purchaser of land ought not be accorded to one who pays only a nominal amount, risking no substantial sum on the purchase. Although a comparative analysis of consideration paid versus the value of the land acquired may or may not be appropriate once substantial value—that is, value beyond a merely nominal sum—is paid, this case does not rise to that level.[9]

**7.** A judgment lienor is not entitled to protection under § 45–1103, apparently following the traditional rule that "the equity under a trust or a contract *in rem* is superior to that under a judgment lien." *Crosby v. Ridout,* 27 App.D.C. 481, 494 (D.C.1906).

**8.** In many jurisdictions a judgment creditor that bids in its debt at the execution sale is not accorded the status of a bona fide purchaser for valuable consideration "because he parted with nothing. Under such circumstances, the judgment creditor is not even protected against secret liens and acquires only such title as was held by the execution judgment debtor." *Boller v. Sun Valley Shamrock Resources, Inc.,* 119 Idaho 1060, 812 P.2d 1221, 1224 (Idaho Ct.App.1991) (citing *Rexburg Lumber Co. v. Purrington,* 62 Idaho 461, 113 P.2d 511 (1941)); *see also Aberdeen Fed. Sav. and Loan Ass'n,* 36 Wash.App. 81, 672 P.2d 409 (Wash.App.1983); *20th Century Plumbing Co., Inc. v. Sfregola,* 126 Cal.App.3d 851, 179 Cal. Rptr. 144 (Cal.Ct.App.1981); *Rio Delta Land Co. v. Johnson,* 475 S.W.2d 346 (Tex.Ct.App.1972). Although there do not appear to be any District

of Columbia cases on this point, Maryland follows this rule. *See Kolker v. Gorn,* 193 Md. 391, 398, 67 A.2d 258, 261 (Md.1949) and cases cited therein. There is no reason why a judgment creditor who bids $1.00 and retains its judgment should be accorded better status than one who purchases by satisfying a substantial judgment debt.

**9.** Courts have held that whether "valuable consideration" has been paid in the context of a recording statute is a different question from whether the consideration is reasonably equivalent to the value received. *See e.g. Horton v. Kyburz,* 53 Cal.2d 59, 346 P.2d 399 (Cal.1959) ("[t]he inadequacy of price is a circumstance to be considered in determining the question of good faith, but it will not the less fall within the legal definition of a valuable consideration, however disproportionate it may be to the value of the land" *quoting Clark v. Troy,* 20 Cal. 219, 224 (1862); *Anderson v. Anderson,* 435 N.W.2d at 689 ("[t]he consideration does not have to be an equivalent value in order to be valuable but it must be substantial and not merely nominal" (citations omitted)).

 Nor is this analysis changed by the fact that the debtor took the property subject to any valid liens that RDK may have. If the debtor had assumed personal liability for the debt to RDK, the assumption might constitute valuable consideration.[10] However, the debtor did not assume the debt. Moreover, Technical has never made any payment to RDK on the RDK liens. It thus runs afoul of the settled rule that a party can only be a bona fide purchaser for valuable consideration if such consideration is actually paid before the purchaser learns of the prior unrecorded interest. *Wright–Blodgett Co. v. United States*, 236 U.S. 397, 404, 35 S.Ct. 339, 341, 59 L.Ed. 637 (1915) ("Notice must be denied previous to, and down to the time of paying the money . . ."); *La Fon v. Grimes*, 86 F.2d 809 (5th Cir.1936); *Clinchfield Coal Corp. v. Steinman*, 213 F. 557, 565 (4th Cir.1914); *United States v. Wythe County Iron & Zinc Corp.*, 11 F.2d 971, 975 (W.D.Va.1926); *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 450, 171 A.2d 736, 743 (Md.1961), *citing Price v. McDonald*, 1 Md. 403, 422 (Md.1851). The reason for this established rule is that the purchaser can stop the transaction without detriment if it becomes aware of the defect in title prior to making payment. Any argument that the unpaid RDK mortgage debt somehow counts as valuable consideration is refuted by this rule: RDK's lien claim against the property cannot count as valuable consideration because the debtor neither paid it nor become personally obligated to pay it prior to learning of the receivership (nor, for that matter, after).

Finally, the fees and other costs incurred by Technical in its bankruptcy proceedings have not been incurred in ignorance of the receivership, but with full knowledge of Jarvis's and RDK's justified contention that the debtor's title is invalid. The only amount arguably spent without notice, the $1.00 purchase price, was purely nominal. These facts do not show a situation where a party has expended substantial money in ignorance of prior interests, entitling it to the protections of a bona fide purchaser for valuable consideration. The debtor can be compensated for everything it expended in reliance on any absence of notice by the return of its $1.00 payment (which RDK has agreed to pay, if necessary).

Thus, even assuming that Technical lacked notice of the receivership and that D.C.Code § 45–1103 applies, Technical could not rely on its absence of notice to challenge the receivership or its effects because it did not purchase the property for valuable consideration.

## C. *The Propriety Of The Receivership Is Not At Issue In This Proceeding*

 The debtor contends that the Receiver's appointment is invalid because it was obtained by means of collusion and fraud on the Superior Court. However, the appointment of the receiver is not subject to collateral attack and this court will not interject itself into that issue. *See Hemisphere Pictures*, 373 A.2d at 49; 65 Am.Jur.2d § 125 (citing cases). The receivership action is still pending, and Moore and Deitz may even have intervened in that proceeding. The Superior Court is in a far better position than this court to hear and decide their allegations of fraud on the court.[11] As for the marshal's sale, however, it was conducted while the property was in control of a receiver appointed by a court of competent jurisdiction, and so was void. If it is later determined that no receiver ought to have been appointed, that will not revive the debtor's title. The contrary rule would allow a sale conducted in contempt of a receivership to cast a cloud over title to the receivership property because of the possibility that the receivership order might later be reversed. It would therefore permit third parties to interfere

---

**10.** Because the debtor did not assume the debt, we need not address whether this general rule is applicable where the purchaser assuming the debt is a shell corporation like the debtor.

**11.** As an exhibit to its reply to defendants' opposition to the summary judgment motion, RDK has attached a copy of a motion filed by Morgan (a general partner in the debtor) in the receivership proceeding, seeking to vacate the November 4, 1991 order, together with the Superior Court's order denying this motion. This motion appears to have raised the same alleged improprieties cited by the Defendants.

with the receivership court's control over the property, in violation of the reasoning that underlies *Wiswall.*

\* \* \*

In conclusion, the marshal's sale was "illegal and void, and passed no title," *Wiswall,* 55 U.S. at 68, because it purported to sell property that was in *custodia legis.* Nor could Moore and Deitz even obtain a judgment lien on the property once it was in possession of the receiver. Technical therefore does not have title to the property. The court will enter judgment accordingly.